48 F.3d 1228
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Govindachari V. MADABHUSHI, Plaintiff-Appellant,
v.
Young A. PLINEY, Chief, Office of Civil Rights, Department
of Health Services; Kenneth Kizer, Md., Director, CA Dept.
of Health Services; Jan Radimsky, Chief, Siting Std
Alternative Technology; John J. Kearns, Deputy dir. Toxic
Substance Control Program; Ted Rans, Chief, Program Adm &
Support Div. TSCP; Carol Kavooras; Mike James; Howard
Hatayama; Tony Landis, Chief, Site Mitigation, Region-1
TSCP; Caroline Cabias, Chief, Adm Services & adm Support
Div. TSCP and Stan Phillipe, Chief, Site Mitigation Program
& adm Support Div., Defendants-Appellees.
 No. 93-16086.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 17, 1994.*
Decided Feb. 23, 1995.
 
 1
 Before: ALARCON and HALL, Circuit Judges, and KING,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Govindachari Madabhushi, an engineer employed by the State of California, challenges on appeal various district court rulings in favor of the California Department of Health Services and others in his Title VII (42 U.S.C. Sec. 2000e) and Age Discrimination in Employment Act (29 U.S.C. Sec. 621) action.
 
 
 4
 Plaintiff is an engineer who is originally from India. He was first hired by the State in 1985 as an engineer with the State Water Quality Control Board.
 
 
 5
 In November 1986 Plaintiff transferred to the Toxics Division of the Department of Health Services (subsequently known as the Department of Toxic Substances Control) as an Associate Waste Management Engineer. At that time he was about 51 years of age. Thereafter, he applied at least nine times for promotion to supervisory positions. In every instance he failed to receive a promotion. He is apparently still employed as an Associate Waste Management Engineer.
 
 
 6
 Plaintiff believes that his failure to be promoted was due to discrimination against him because of his age and his race or place of origin. He contends that he was repeatedly passed over for promotion in favor of less qualified white and/or younger applicants. Accordingly, in 1989 he filed a complaint with the EEOC, and with the Civil Rights Office of the Department of Health Services. Being unsuccessful in his administrative complaints, Plaintiff then filed a complaint in pro per in the district court on January 24, 1991. Shortly afterward, he obtained an attorney who then filed a First Amended Complaint on March 29, 1991.
 
 
 7
 In response to the First Amended Complaint defendants moved to dismiss. The motion was granted in part but plaintiff was given leave to amend. On September 8, 1992, he filed a Second Amended Complaint. Defendants filed a motion to strike some of plaintiff's claims as time barred. The district court granted this motion, holding that five of plaintiff's nine claims were time barred. The district court ruled that the nine instances of failure to promote were specific, discrete incidents for which plaintiff sought personal damages, and thus they did not come within the ambit of the continuing violations doctrine. The district court found that this would not work hardship on plaintiff since plaintiff seeks primarily injunctive relief in the form of a promotion. Based on this ruling, the court struck from the complaint the five claims based on incidents which occurred prior to January 21, 1989.
 
 
 8
 The four incidents which remained were as follows. First, in March 1989, plaintiff applied for a promotion to the position of Senior Waste Management Engineer ("SWME"). He was interviewed by telephone. Although plaintiff was "reachable," or eligible under the civil service ranking system to be offered the position, it was given to someone else whom plaintiff alleges had far less "technical" experience, and was also young and white.
 
 
 9
 Defendants' position is that the person hired performed better in the hiring interview than plaintiff.
 
 
 10
 Second, plaintiff heard about another SWME position which he felt was within his "specialty." No interviews were conducted. Instead the position was offered to a "lateral," someone already occupying the position of SWME in another unit.
 
 
 11
 Defendants' position is that interviews need not be conducted when a lateral is hired.
 
 
 12
 Third, plaintiff wanted to apply for the SWME position left open by his supervisor, who was the one laterally transferred to the other unit. At the time the position opened up, plaintiff was in the third rank on the civil service list, which meant he was "reachable." The hiring supervisor did not go off the existing list, but instead waited for a new promotion exam to be administered. Plaintiff took this exam, and was ranked last among the 15 or 16 people interviewed. This meant he was not "reachable." Thus, Plaintiff was not given an interview for the vacant SWME position. Plaintiff claims that the hiring supervisor purposely waited for the new exam results to come out so that plaintiff would not be eligible. Plaintiff further claims that the hiring supervisor brought in another person and made her the "leadperson", the temporary supervisor while the position was vacant, in order to boost her chances of getting the permanent SWME position. This person was eventually appointed to the vacant SWME position.
 
 
 13
 Defendants' position is that the hiring supervisor waited for the new list so that he would have a fresh list of candidates, the previous list having been out for some time. Then once the new list came out, plaintiff was not "reachable."
 
 
 14
 Finally, plaintiff heard about another open SWME position. No interviews were ever conducted for this position, and the job duties were eventually assigned temporarily to someone internally because the position lost its funding.
 
 
 15
 After the pretrial procedural maneuvering, plaintiff was left with two causes of action: (1) a Title VII cause of action against the State agency, and (2) an ADEA cause of action against both the individuals named as defendants and the State agency. The Honorable Samuel Conti, presiding judge, first ruled that the two claims would be tried at the same time, with the jury to decide the ADEA claim and the judge to decide the Title VII claim. Judge Conti changed his mind early in the trial, ruling that evidence on the race claim would be heard separately in order to avoid confusion.
 
 
 16
 The jury trial lasted three days. Following presentation of the evidence, defendants moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) on the ADEA claim. The district court orally granted the motion. A written order to that effect was filed May 5, 1993.
 
 
 17
 The district court heard the race/national origin claim and on May 5, 1993, entered Findings of Fact and Conclusions of Law and ordered judgment in favor of defendants. Final judgment of the district court against plaintiff as to all causes of action was entered on May 5, 1993. Plaintiff filed a notice of appeal from that judgment on May 28, 1993.
 
 
 18
 Defendants ask this court to dismiss plaintiff's appeal because "in prosecuting this appeal plaintiff is guilty of so many irregularities and procedural improprieties as to justify dismissing his appeal."
 
 
 19
 While the point is well taken, we do not consider that the sanction of dismissal of the appeal is warranted in this instance. It does not appear that appellees have been prejudiced by appellant's numerous failures to comply with the rules. See Walker v. Mathews, 546 F.2d 814, 818 n. 3 (9th Cir.1976); Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir.1991).
 
 
 20
 Plaintiff first contends on appeal that the district court improperly ruled that his nine claims of failure to promote do not come within the ambit of the continuing violation doctrine. Although the district court may have read the cases on the continuing violation doctrine somewhat narrowly, it did not err in finding that plaintiff's claims did not meet its requirements.
 
 
 21
 The primary problem with plaintiff's position is that he is unable to link these nine incidents in any way, other than that he sought promotion and was turned down. The candidates for each position were different, the questions were different, the interviewers were different, often the jobs were different. To be a continuing violation, there must be "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." International Brotherhood of Teamsters v. United States, 431 U.S. 324, 336 (1977). It must be shown that the discriminatory conduct was "standard operating procedure--the regular rather than the unusual practice." Id. at 336. Plaintiff has not met this test.
 
 
 22
 Plaintiff next argues that the district court improperly refused to consider a Motion to Compel Production of Documents. The motion was concededly late under the motions schedule set by the district court. The district court's decision is reviewed under an abuse of discretion standard. Herring v. Delta Airlines, Inc., 894 F.2d 1020, 1023-24 (9th Cir.), cert. denied, 494 U.S. 1016 (1990). Plaintiff has offered no reason why the district court abused its discretion in this instance.
 
 
 23
 In an apparent attempt to get around the court's refusal to hear his motion to compel, plaintiff issued a "trial subpoena" commanding defendants to produce the wanted documents at trial. The court quashed the subpoenas, ruling that the request for documents was too late. The court stated: "This case has been going since 1991. And now two weeks before--before the trial you come up with this business? No way, my friend. No way."
 
 
 24
 This ruling is reviewed for abuse of discretion. Donoghue v. Orange County, 848 F.2d 926, 931 (9th Cir.1987). Again, plaintiff has failed to argue or cite any authority for the proposition that the district court abused its discretion.
 
 
 25
 Plaintiff also argues that he was entitled to a jury trial on his Title VII claims. Section 102 of the Civil Rights Act of 1991 (the "Act"), provides, inter alia, that a party may demand a trial by jury if damages are sought for a Title VII violation. No such right was provided under previous law. The Act became effective on November 21, 1991. This case, however, was originally filed on January 24, 1991, and therefore the claims arose prior to November 21, 1991. The United States Supreme Court has ruled that the Act's provisions do not apply retroactively. Landgraf v. USI Film Products, --- U.S. ----, 114 S.Ct. 1483 (1994). Accordingly, the district court committed no error.
 
 
 26
 The district court's decision to bifurcate the claims is reviewed for abuse of discretion. United States v. 1,071.08 Acres of Land, Etc., 564 F.2d 1350, 1352 (9th Cir.1977). Plaintiff claims that the court's bifurcation of the age and race claims inhibited "a reasonable presentation of the case and artificially impeded presentation of proof." However, plaintiff failed to object to the district court's decision to bifurcate. In addition, plaintiff was not prejudiced by the decision because he did not believe it was necessary to present any evidence on the race claim. Plaintiff submitted the race claim to the district court based on the evidence produced during the trial on the age claim. He did not submit additional evidence. Thus, there was no abuse of discretion.
 
 
 27
 Evidentiary rulings at trial are subject to an abuse of discretion standard. Brown v. Sierra Nevada Memorial Miners Hospital, 849 F.2d 1186, 1189 (9th Cir.1988). We have examined the several evidentiary matters about which plaintiff complains and find no abuse of discretion.
 
 
 28
 This court reviews de novo the grant of a motion for judgment as a matter of law. Montiel v. City of Los Angeles, 2 F.3d 335, 342 (9th Cir.1993). The evidence is to be viewed in the light most favorable to the appellant, here plaintiff, and all possible inferences are to be drawn in favor of appellant. Miller v. Fairchild Industries, Inc., 885 F.2d 498, 503 (9th Cir.1989), cert. denied, 494 U.S. 1056 (1990).
 
 
 29
 In order to establish a prima facie case of age discrimination, plaintiff had to demonstrate: (1) that he was in a protected age group, (over 40 years); (2) that he was qualified for the position sought; (3) that plaintiff was not promoted; and (4) individuals outside of the protected class were promoted. Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 672 (9th Cir.1988). It is undisputed that plaintiff meets the first two criteria. Thus, the focal issue is whether there was sufficient evidence that age was a motivating factor in the failure to promote plaintiff. The district court found there was not. Plaintiff has failed to point to anything in the record to support his claim of error by the district court. In any event, an independent review of the record has not revealed any evidence whatsoever to support even an inference that age was a factor in the decisions not to promote plaintiff.
 
 
 30
 Finally, plaintiff appeals from the district court's award of attorney's fees to defendants in this case on the grounds that the action was not frivolous or brought in bad faith and that the amount of the award is inappropriate. The attorney's fee award was made by the district court after this appeal was filed, and therefore a separate notice of appeal was filed. That appeal, No. 93-16806, was dismissed for lack of jurisdiction on January 7, 1994. Plaintiff cannot raise the issue again here.
 
 
 31
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3