William A. BROWN, M.D.,
Plaintiff–Appellant,

v.

SIERRA NEVADA MEMORIAL MINERS HOSPITAL, et al.,
Defendants–Appellees.

No. 86–2806.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 12, 1988.

Decided June 14, 1988.

---

Roderick P. Bushnell, Bushnell, Caplan & Fielding, San Francisco, Cal., for plaintiff-appellant.

Robert T. Fries, Steinhart & Falconer, San Francisco, Cal., for defendants-appellees.

Before CHOY, SNEED and HUG, Circuit Judges.

SNEED, Circuit Judge:

Dr. William Brown, a black man, filed suit against Sierra Nevada Memorial Miners Hospital (Sierra) and seven doctors affiliated with Sierra, alleging violations of 42 U.S.C. § 1981. The district court found for the defendants, and Brown appealed. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

Brown has been a physician for over forty years and is licensed in California, Missouri, Ohio, Oregon, and West Virginia. He practiced in California from 1960 to 1978. He then worked briefly in Ohio and Oregon before returning to California and applying for general surgical privileges at Sierra in Penn Valley in March 1980. Four months later, after Sierra's application process was completed, Sierra gave Brown associate staff privileges. "This entitled him to admit patients to the Hospital and perform surgical procedures, with retrospective review of his patient charts and contemporaneous observation ('proctoring') of his surgical cases by active staff members." Findings of Fact and Conclusions of Law, Excerpt of Record (E.R.) at 182.

Brown states that while he was waiting to receive associate status, Sierra changed its bylaws to require proctoring. He charges that this change and the four-month delay in the processing of his application were due to his race. The defendants/appellees attribute the four-month delay to tardiness by Brown in finishing the application, and misstatements in the application about Brown's previous experience. They also state that Sierra has used proctoring since at least 1977. The district court agreed with the defendants. E.R. at 193.

Over the next year, 1980–81, Brown performed several surgeries, which were proctored by active staff members. Their review of Brown's performance was mixed: "Some found [his] performance adequate,

while others were critical of his surgical skills, surgical judgment, or both." Findings of Fact and Conclusions of Law, E.R. at 182. In April 1981, Sierra's Surgical Monitor Committee told Brown that it could not recommend the granting of full surgical staff privileges. It told him that it would continue to proctor his surgeries, and that it wished to review his operative reports for the five years before he arrived at the hospital. During this period of proctoring and review Brown filed three complaints with the California Department of Fair Employment and Housing, all of which were dismissed.[1]

In June 1982, Sierra's Executive Committee adopted the Surgical Monitor Committee's recommendation that Brown not receive full surgical privileges. While he awaited review of that decision, Brown applied for medical privileges, which would allow him to treat non-surgical patients at Sierra. In October 1983, the Medical Monitor Committee "recommended to the Executive Committee that based upon review of [Brown's] patient charts, he should not be allowed to continue admitting medical patients to the Hospital." Findings of Fact and Conclusions of Law, E.R. at 183–84. The Executive Committee agreed. In February 1984, Sierra's Judicial Review Committee upheld the denial of privileges.

Sierra then reported its result to the State Board of Medical Quality Assurance (BMQA). The BMQA found Brown's medical care adequate, and did not discipline him. The documents generated by this process played a significant role in this litigation.

Following the initial denial of full surgical privileges, Brown filed a complaint in December 1982 in the district court for the Eastern District of California. In November 1983, after being denied the privilege of admitting patients to Sierra, Brown filed an amended complaint against Sierra and seven doctors on Sierra's staff, alleging discrimination under 42 U.S.C. § 1981, as well as under several other statutes. In

---

1. The first two were dismissed for lack of jurisdiction. The third was dismissed because of insufficient evidence.

April 1985, the parties agreed to dismiss the claims under the statutes other than § 1981. A bench trial on the section 1981 claim was held before Judge Raul Ramirez in February and March 1986. The court found in favor of the defendants, and issued findings of fact and conclusions of law in September 1986. Brown timely appealed. Initially we will review a cluster of evidentiary issues and then turn to arguments concerning the standard of proof and the correctness of the findings of fact.

## II.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. This court's jurisdiction rests on 28 U.S.C. § 1291.

## III.

## STANDARD OF REVIEW

Most of the issues raised by Brown involve evidentiary rulings. This court has stated that it reviews a district court's evidentiary decisions for an abuse of discretion. *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1333 (9th Cir.1985). Such issues of law as are involved are reviewed *de novo* and findings of fact are reviewed under the clearly erroneous standard.

## IV.

## EVIDENTIARY RULINGS

A. *Documents of the Board of Medical Quality Assurance and Sierra's Judicial Review Committee*

■ As indicated above, the BMQA conducted an investigation into Brown's competence after Sierra revoked Brown's privileges. Because the BMQA's findings were not unfavorable to Brown, he sought to have admitted into evidence many favorable documents generated by that proceeding. Before trial, the district court held a hearing to determine whether to admit the findings of this investigation. It decided to

exclude as hearsay two reports sent to the agency from outside consultants.[2] It did not agree with Brown that the reports were admissible under Federal Rule of Evidence 803(8)(C), which states that certain public documents are not excluded by the hearsay rule:

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

The judge ruled that Rule 803(8)(C) was meant to cover only final reports, not "to piggyback the whole administrative proceeding" into the trial. E.R. at 879. Because the consultants' letters to the agency were not reports or statements of an agency, they were held to be inadmissible.

Brown argues that the trial court erred in its application of Rule 803. He cites *United States v. American Tel. & Tel. Co.*, 498 F.Supp. 353 (D.D.C.1980), for the proposition that this exception should be interpreted broadly. Brown reads too much into that case. The court there was deciding whether to limit the exception to strictly factual findings or to findings that included some evaluation. *Id.* at 359–60. It did not concern interim reports filed by outside consultants, and is therefore inapposite here.

More closely on point is *Zenith Radio Corp. v. Matsushita Elec. Ind. Co.*, 505 F.Supp. 1125 (E.D.Pa.1980). There, the court held that where "a staff report is submitted to a commission or other public agency charged with making formal findings, only those factual statements from the staff reports that are approved and adopted by the agency will qualify as 803(8)(C) 'findings.'" *Id.* at 1145. The Second Circuit reached a similar result in *City of New York v. Pullman Inc.*, 662

---

2. Brown argues that these outside sources were actually investigators, and therefore part of the agency. He points to no evidence that would

lead us to believe that the trial court's finding to the contrary was clearly erroneous.

F.2d 910 (2d Cir.1981), *cert. denied,* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982), which involved an "interim" staff report. Because the report "did not embody the findings of an agency, but the tentative results of an incomplete staff investigation," the court held that it was not covered by Rule 803(8)(C). *Id.* at 915.

We find *Zenith Radio Corp.* and *City of New York* persuasive, and hold that the trial court did not abuse its discretion. The rationale behind Rule 803(8) is that an administrative body's findings may be assumed to be trustworthy. *American Tel. & Tel.,* 498 F.Supp. at 360. That assumption has substantially diminished force when extended to the sources outside the investigative agency from which the agency culls the information for its report.

■ Brown next points out that the court did not allow him to testify at trial as to the BMQA's final conclusions despite the fact that at the pretrial hearing the district court said that the BMQA's final conclusions would be admissible. *See* E.R. at 233, 880. The court based its decision to exclude on the ground that the evidence was irrelevant, because (1) the BMQA findings were released two years after Sierra's revocation of Brown's privileges, and (2), as the judge said, "even if you are licensed and qualified to be licensed, that does not preclude hospitals from setting higher standards." Reporter's Transcript (R.T.) at 131.

Brown's position is correct. The conclusions of another investigation of Brown's medical ability, conducted by third parties to this case, are clearly relevant to this case. Their relevance may have been reduced by the facts on which the court relied to exclude them but it was not eliminated.

■ But to reverse on the basis of an evidentiary error, "we must say that more probably than not, the error tainted" the judgment. *Kisor v. Johns–Manville Corp.,* 783 F.2d 1337, 1340 (9th Cir.1986); *see Coursen v. A.H. Robins Co.,* 764 F.2d 1329, 1339 (9th Cir.1985) ("Evidentiary errors will not result in reversal absent some resulting prejudice."). We are unable to so

hold. As will be demonstrated below, the evidence at trial strongly supported the judgment. Although the excluded evidence supported Brown's contentions, it is quite improbable that its absence tainted the judgment.

### B. *Transcript of Sierra's Judicial Review Committee*

■ Sierra's Judicial Review Committee formally reviewed the denial of privileges to Brown. At trial, Brown's counsel attempted to introduce the transcript of this proceeding during his cross-examination of the defendants' expert witness. The court held that he had not laid a proper foundation for the transcript's admission. E.R. at 329–30. Fed.R.Evid. 611(b) states:

> Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

*See United States v. Hearst,* 563 F.2d 1331, 1337 (9th Cir.1977), *cert. denied,* 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978) (trial court has discretion to determine the order in which parties should adduce proof at trial). On appeal, Brown states, in a conclusory fashion, that "the facts clearly indicate that there was sufficient evidence laid." Appellant's Brief at 21. At trial, Brown's counsel, however, did not point to parts of the transcript that would rebut the expert's testimony or impeach his reliability. He emphasized that the transcript would show pretext on the defendants' part, E.R. at 328–29, but pretext was not the issue toward which the expert's testimony was directed. The district court did not abuse its discretion in excluding this evidence.

### C. *Brown's expert testimony*

■ At trial, over the defendants' objection, the court held that Brown qualified as an expert witness. The trial judge added, "I will not permit him, however, to testify that this is what doctor so-and-so back east told him he should do or doctor so-and-so in

the hospital told him was the appropriate thing to do." E.R. at 226. Brown now argues that this restriction improperly limited the possible scope of his testimony and was inconsistent with the way in which experts generally are permitted to testify. He relies on Fed.R.Evid. 703, which states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Brown argues that experts in his field rely upon the advice of other experts, and that therefore he should have been allowed to testify as to the recommendations a Dr. Talynn gave him as to a particular surgical procedure.

Brown has a point, but unfortunately he did not object at trial to the court's limiting his testimony. Nor did he make an offer of proof to show what evidence the court's ruling excluded. Therefore, this court reviews only for plain error. Fed.R.Evid. 103(a), (d); *see Coursen,* 764 F.2d at 1333. There is no plain error here. It is clearly recognized that "The trial court has broad discretion in admitting and excluding expert testimony, and we will sustain the court's action unless it is manifestly erroneous." *Taylor v. Burlington N.R.R.,* 787 F.2d 1309, 1315 (9th Cir.1986).

### D. *Testimony by Brown's patients*

■ At trial, the court refused to allow Ellsworth Hartbauer, a patient of Brown's, to testify that the hospital staff treated him better when he was the patient of a white doctor than when he was Brown's patient. The court held that unless Hartbauer could testify as to statements by hospital staff, his testimony was too tenuously relevant to be admissible.

In *United States v. Stewart,* 770 F.2d 825, 830 (9th Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 888, 88 L.Ed.2d 922 (1986), we said the trial court did not abuse its discretion by excluding evidence that "was only slightly relevant, if at all, and [that] was clearly collateral to the central issues of the trial." Brown argues that the evidence was more than slightly relevant, that it could have indicated "a hospital-wide pattern and practice, or policy towards Dr. Brown and his patients, revealing illegal discrimination." Appellant's Brief at 30–31.

The trial court properly noted that many other factors may affect a patient's experience at a hospital, other than the talent and skills of the patient's doctor. It decided, therefore, that isolating these other factors would raise many collateral issues of little relevance at considerable cost to, and loss of time during, the trial. E.R. at 289–90. This decision was clearly within the trial court's discretion.

### E. *Evidence as to Sierra's treatment of other doctors*

■ Another doctor, Ward, started at Sierra about the same time as Brown. At trial, Brown attempted to show that Sierra treated Ward much better than Brown, even though Ward's background and record at Sierra did not warrant such treatment. Brown's theory was sound. If he could have shown such a disparity, of course, it would have greatly helped him demonstrate that the defendants' justification for their treatment of him was pretextual.

However, Brown's proffer of proof was inadequate. The court held that the evidence was inadmissible because Brown did not show that the two doctors were similarly situated. The court did not want to compare the treatment given Brown as an associate with the treatment Ward received while on full, or active, surgical status.[3] The court stated that if Brown could set a proper foundation by showing either (1) that Ward and Brown were treated differently while they were in the same status,

---

**3.** Although Ward arrived at Sierra after Brown, Ward was given full staff privileges while Brown was still an associate.

or (2) that Ward and Brown were not in the same status because white doctors were moved through the associate staff position more quickly than Brown, then the evidence would be admissible. E.R. at 249–51. The court did not leave Brown to guess at what was needed. It gave Brown a fairly detailed description of the type of foundational evidence required for Brown to show that he and Ward were similarly situated. The judge said he would require "more information on the status of Dr. Ward, the nature of the problems of Dr. Ward, the review systems and supervision systems that were available to Dr. Ward at the time he allegedly committed these misfeasance actions versus the status of Dr. Brown when he allegedly committed his misfeasance actions." R.T. at 160. At a minimum, the judge said Brown would have to establish the applicable "time frames." R.T. at 158.

Brown does not dispute that the court's required foundation for the testimony was proper. *See Fong v. American Airlines, Inc.*, 626 F.2d 759, 761–62 (9th Cir.1980). Rather, he states, in substance, that the court rejected the foundation that it requested and Brown offered. Each time he "attempted to submit information constituting proper foundation, defense counsel objected and the objections were sustained, thus preventing appellant from submitting a proper foundation." Appellant's Brief at 33 n. 2. This is incorrect. Brown merely attempted to introduce evidence that Ward had committed a major error in surgery, but he never attempted to introduce the other foundational evidence necessary to permit an effective comparison of the treatment of Brown and Ward. The district court therefore properly refused to allow Brown to testify as to the alleged error.

## V.

### THE STANDARD OF PROOF

The trial court followed the familiar standard of proof set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *McDonnell Douglas* in discrimination suits permits a prima facie case to be established by inference, without actual evidence of discriminatory intent. The district court found that Brown created such a prima facie case. Findings of Fact and Conclusions of Law, E.R. at 185–86. The burden of production then shifted to the defendants to produce evidence of a legitimate, non-pretextual rationale for their actions at least sufficient to neutralize the prima facie case. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The court found that the defendants met this burden. E.R. at 187–89. The burden of persuasion then shifted back to Brown to show that "the legitimate reasons offered by the defendant[s] were not [their] true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. The court found that Brown did not meet this burden, and therefore failed to prove his charge of discrimination. E.R. at 189–96.

Brown now argues that the district court applied the wrong standard of proof. He cites two Eleventh Circuit cases, *Miles v. M.N.C. Corp.*, 750 F.2d 867 (11th Cir.1985), and *Bell v. Birmingham Linen Serv.*, 715 F.2d 1552 (11th Cir.1983), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984), for the proposition that a heavier burden of production (more evidence of a legitimate reason than is ordinarily required) is shifted to defendants when the plaintiff makes his case with *direct* evidence than when he makes his case with indirect evidence. Brown argues that the court erred by not determining whether he made out his prima facie case with direct or indirect evidence, and that he did in fact bring forward direct evidence of discrimination.

This failure is of little consequence. It is obvious that a strong prima facie case cannot be neutralized by weak evidence of a legitimate reason for the challenged action. It is also obvious that direct evidence of discriminatory intent, which is accepted by the court as sufficient to establish such intent, cannot be refuted by strong evidence of another reason, albeit a legitimate one. This was precisely stated in *Bell*:

If the evidence consists of direct testimony that the defendant acted with a discriminatory motive, and the trier of fact accepts this testimony, the ultimate issue of discrimination is proved. Defendant cannot refute this evidence by mere articulation of other reasons....

*Bell*, 715 F.2d at 1557.

■ Brown's difficulty is that such testimony or evidence as he might choose to label as "direct" was neither strong nor accepted by the court as proof of a discriminatory intent. At best, Brown's evidence could establish no more than a prima facie case under the *Burdine/McDonnell Douglas* standard of proof. Of course, Brown does not agree with this evaluation of his evidence; it is, however, in substance the evaluation of the district court. Brown's fundamental point is that the district court should have found that he had established a discriminatory intent incapable of being overcome by proof of an accompanying legitimate purpose. This goes not to whether the court applied the correct standard of proof, but to whether the court's findings were supported by sufficient evidence, which we address next.

## VI.

### SUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDINGS OF FACT

■ This court reviews a district court's findings of fact on discriminatory intent under the clearly erroneous standard. *Casillas v. United States Navy*, 735 F.2d 338, 342 (9th Cir.1984). "An appellate court may not set aside findings of fact unless 'on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed.'" *Johnson v. United States Postal Serv.*, 756 F.2d 1461, 1464 (9th Cir.1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). In particular, "[c]redibility determinations are insulated from appellate review." *Johnson*, 756 F.2d at 1464.

To establish that the district court's evaluation of his evidence was clearly erroneous, Brown asserts that the district court made three "clearly erroneous findings of

fact: (1) that the other white doctors who were granted full staff privileges at Sierra were more qualified than appellant; (2) that appellant failed to meet the general standard for competence at a California hospital; (3) that Sierra employees' statements do not allow a finding of discriminatory animus." Appellant's Brief at 44 (citations to the Excerpt of Record omitted).

The evidence clearly supports the first two of the three challenged findings. The court found that Brown had very little recent surgical experience, especially compared with Ward. E.R. at 187–88. The reports of the proctors, the court found, showed that:

> Dr. Brown engaged in improper treatment of his patients, was unorganized and rusty, lacked experience, was overly intrusive, performed surgery on too slow a basis, subjected his patients to unnecessary surgery, committed surgical errors which, if they had not been brought to his attention would have been overlooked, and put his patients at risk. All of these matters are basically uncontradicted. The only attempt at refutation came from Dr. Brown himself who testified basically that he had a different medical opinion.

E.R. at 188.

There is little in the record to dispute these findings. Apparently the trial court relied a great deal on the testimony of defendants' expert witness, Dr. Schaupp. E.R. at 190. Brown attacks Schaupp's testimony on two main grounds: (1) in medicine opinions can differ and (according to Brown's testimony) Brown's surgical techniques were accepted in the field; and (2) Schaupp knew the defendants' counsel personally. Appellant's Brief at 45–46. Neither of these grounds is sufficient to show that the court erred in finding Schaupp's testimony more credible than Brown's. Brown's trial counsel did not call expert witnesses of his own (besides Brown himself) to refute Schaupp's testimony.

Finally, Brown points to several statements made by doctors associated with Sierra in arguing that these statements require a finding of discriminatory intent. Appellant's Brief at 46. Only one of the statements is unambiguously helpful to

Brown's case: Ward told him that "You're not going to make it in this town. I don't know whether it's racial or whether they just don't like you, but you're not going to make it in this town." Appellant's Brief at 8. The trial court noted these statements and obviously weighed them in Brown's favor, but concluded that "considering the evidence presented at trial as a whole, and the relative credibility of the witnesses," they did not justify a finding of discriminatory intent. E.R. at 191. After reviewing the evidence presented, we cannot find that the court's findings of fact are clearly erroneous.

## VII.

## SANCTIONS

Counsel for Sierra requested that sanctions be imposed on Brown's counsel for having stated in his brief certain facts as undisputed when, in fact, they were disputed, and having referred to evidence not admitted in evidence as if it had been. Brown's counsel is not wholly free of these sins of advocacy but, on the other hand, his transgressions are neither pervasive nor insidious. Although we do not condone the actions of Brown's counsel, we do not impose sanctions in this instance.

AFFIRMED.