**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J. Fisher, Jr.                                                                                    Elisabeth A. Shumaker
Clerk                                                                                                         Chief Deputy Clerk

July 24, 1998

**TO:**   ALL RECIPIENTS OF THE AMENDED OPINION

**RE:**   96-6254, 96-6267, 97-6082, *Vining v. Enterprise Fin. Group, Inc.*
Amended opinion filed on July 22, 1998.

The amended opinion filed on July 22, 1998, contains a clerical error. The error is located on page three of the opinion, the last sentence of the paragraph continued from page two, immediately before the BACKGROUND section. The last sentence of the paragraph should now read as follows:

We affirm on all issues, except we retain jurisdiction and do not now decide the issues raised on appeal pertaining to prejudgment interest and attorneys' fees.

A corrected copy of page three is attached for your convenience.

Very truly yours,

Patrick Fisher, Clerk

Keith Nelson
Deputy Clerk

encl.

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

BILLIE VINING, surviving spouse
and next of kin on behalf of Milford
Vining deceased,

      Plaintiff-Appellee-Cross-
      Appellant,

v.

ENTERPRISE FINANCIAL GROUP,
INC., a foreign corporation,

      Defendant-Appellant-Cross-
      Appellee.

Nos. 96-6254, 96-6267,
and 97-6082

---

ORDER

Filed July 22, 1998

---

Before **SEYMOUR**, Chief Judge, **EBEL**, and **BRISCOE,** Circuit Judges.

---

This matter is before the court on its own motion to vacate the opinion and

judgment issued on July 6, 1998 and to reissue an amended opinion and partial

judgment. The attached opinion constitutes the decision of the court. A forthwith

partial mandate and partial judgment are issued with respect to the issues addressed

in today's amended opinion. The court retains jurisdiction to address the issues of

prejudgment interest and attorneys' fees. We will issue a supplemental decision on

those issues following the Oklahoma Supreme Court's resolution of the certified questions submitted in appeal number 95-5207, *Taylor v. State Farm Fire and Casualty Company.* The order submitting those certified questions was filed in this court on June 19, 1997. The parties to this appeal shall monitor the proceedings in the *Taylor* matter and submit notice to this court immediately upon its resolution in the Oklahoma Supreme Court. Pending that disposition, the portion of these appeals concerning the issues of prejudgment interest and attorneys' fees is abated.

Entered for the Court

PATRICK FISHER, Clerk of Court

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 22 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BILLIE VINING, surviving spouse
and next of kin on behalf of Milford
Vining, deceased,

       Plaintiff-Appellee-Cross-
       Appellant,

v.

ENTERPRISE FINANCIAL GROUP,
INC., a foreign corporation,

       Defendant-Appellant-Cross-
       Appellee.

Nos. 96-6254, 96-6267,
and 97-6082

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CIV-95-1149-M)**

---

Jared D. Giddens, Self, Giddens & Lees, Inc., Oklahoma City, Oklahoma (Bryan J.
Wells with him on the brief) for defendant-appellant-cross-appellee.

Mark A. Engel, Mansell & Engel, Oklahoma City, Oklahoma (Steven S. Mansell with
him on the brief) for plaintiff-appellee-cross-appellant.

---

Before **SEYMOUR,** Chief Judge, and **EBEL** and **BRISCOE**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Plaintiff-Appellee Billie Vining brought a bad faith insurance claim as surviving spouse and next of kin on behalf of her deceased husband Milford Vining.[1] Vining claimed that defendant-appellant Enterprise Financial Group, Inc. acted improperly in rescinding a credit life insurance policy after Vining made a claim under the policy as a result of her husband's death. At trial, the jury found in favor of Vining and awarded her compensatory and punitive damages. Enterprise appeals the judgment of the district court on the grounds of insufficient evidence, improper consideration of inadmissable evidence, improper jury instructions, failure to order a remittitur based on an excessive damage award, failure to order a new trial because the jury verdict was the product of passion and prejudice, improper award of prejudgment interest, and improper award of attorneys' fees. Vining cross-appeals,

---

[1] The opinion in these appeals was originally filed on July 6, 1998, but the mandate was not issued. Upon order of the panel, that opinion is vacated and this new amended opinion is filed in its place. The amended version is identical to the original opinion with the exception of the deletion of Section V., Prejudgment Interest, and Section VI., Attorneys' Fees. Those two issues have not been addressed pending receipt of a ruling from the Oklahoma Supreme Court on certified questions that we submitted to that court on June 19, 1997, in the case of Taylor v. State Farm Fire and Casualty Company, No. 95-5207. The questions certified to the Oklahoma Supreme Court in that case may be dispositive of the issues of prejudgment interest and attorneys' fees in this case. In accord with the separate order entered with this amended opinion, we shall issue a partial mandate, forthwith, with reference to those issues addressed in this amended opinion. The court will retain jurisdiction over the remaining issues of prejudgment interest and attorneys' fees and will issue a supplemental opinion disposing of those issues after we receive the opinion from the Oklahoma Supreme Court answering the certified questions in Taylor.

arguing that in the event a new trial is ordered, the court should award additional punitive damages based on Enterprise's willful conduct. We affirm on all issues, except we retain jurisdiction and do not now decide the issues raised on appeal pertaining to prejudgment interest and attorneys' fees.

## BACKGROUND

On March 9, 1992, Milford Vining ("Milford"), now deceased husband of plaintiff-appellee Billie Vining ("Vining"), purchased a Jeep at Crown Auto World in Tulsa, Oklahoma. Defendant-Appellant Enterprise Financial Group ("Enterprise"), through a wholly owned subsidiary ELIC, had appointed Nancy Sidler ("Sidler") as its finance and insurance representative at the car dealership. Enterprise sold credit life insurance policies as a way for customers to insure that car payments would be covered in the event of death. Sidler offered and Milford elected to buy an Enterprise credit life insurance policy (the "Policy") in connection with the purchase of the vehicle. Sidler had never been trained in any way by Enterprise, including training on what constituted "good health" under Enterprise's definition.

Milford died on May 28, 1993 of an acute myocardial infarction (sudden heart attack). At the time of his death, Milford's Policy had a pay-out value of $10,046. Vining made a claim for death benefits under the Policy, and Enterprise subsequently rescinded the Policy, claiming that Milford had misrepresented

-3-

material health history in his insurance application and that the Policy was issued in reliance upon this misrepresentation. Vining unsuccessfully contested the rescission and sent letters to the Oklahoma Insurance Department complaining of Enterprise's conduct. On July 27, 1995, Vining brought an action for breach of contract and for bad faith in the United States District Court for the Western District of Oklahoma. Enterprise defended on the grounds that it had a legitimate basis for contesting Vining's claim, and thus did not act in bad faith. Enterprise also raised the affirmative defense of rescission, arguing that Milford made material misrepresentations in the insurance application which justified a rescission of the Policy pursuant to Okla. Stat. tit. 36, § 3609 (1990).

During trial, Vining proved the following facts.[2] Milford had suffered from coronary artery disease which resulted in a triple coronary bypass operation in 1983. After the surgery, Milford underwent a series of post-bypass tests and procedures and began taking heart maintenance medication to prevent the occurrence of angina. Milford complained of no chest pains or other symptoms from the time immediately following the operation up until the time of his death. Milford visited Dr. Michael Sullivan ("Dr. Sullivan") on February 12, 1992, for a

---

[2] Because this case involves an appeal of the district court's denial of Enterprise's motion for judgment as a matter of law, we review the evidence in the light most favorable to Vining as the non-moving party. See Doan v. Seagate Technology, Inc., 82 F.3d 974, 976 (10th Cir. 1996), cert. denied, 117 S. Ct. 684 (1997).

get-acquainted visit because he recently had moved and wanted to find a new doctor nearer to his home. Milford's visit was not precipitated by any symptoms or medical reasons. In fact, Milford led a very active life. Dr. Sullivan continued Milford on his heart maintenance medications as a preventive measure. At the time of Milford's visit with Dr. Sullivan, Milford suffered from little, if any, angina.

The insurance application Milford signed included a disclaimer that stated: I HEREBY CERTIFY THAT I AM IN GOOD HEALTH AS OF THE EFFECTIVE DATE ABOVE. I FURTHER CERTIFY THAT I DO NOT PRESENTLY HAVE, NOR HAVE I EVER HAD, NOR HAVE I BEEN TOLD I HAVE, NOR HAVE I BEEN TREATED WITHIN THE PRECEDING 12 MONTHS FOR ANY OF THE FOLLOWING: ANY HEART DISEASE, OR OTHER CARDIOVASCULAR DISEASES. . . .

Both parties agree that Milford did not intentionally attempt to mislead Enterprise by signing the disclaimer, that Milford's appointment with Dr. Sullivan was his only medical visit in the twelve months preceding the Policy purchase date, and that under Oklahoma Insurance Regulations, an insurance company may only consider the last twelve months of an insured's medical history to evaluate an insurance application.

After Milford's death, Enterprise sought all of Milford's medical records, including Dr. Sullivan's notes. On the same day it received Dr. Sullivan's notes, Enterprise rescinded the Policy. Enterprise routinely contests all claims on life insurance policies made within two years of a policy's effective date and investigates to find misrepresentations in the insurance application.[3] Debbie Cluck ("Cluck"), Enterprise's claims examiner, denies four out of every ten claims that she reviews. Enterprise does not have a claims manual or any written guidelines specifying when a claim is payable or not, and it never informed Cluck of any applicable Oklahoma law or regulation pertaining to when a policy may be rescinded. Enterprise had no system of tracking whether any of its agents routinely sold policies to ineligible applicants.

Cluck felt it appropriate to rescind a policy even if the agent issued the policy with full knowledge of an applicant's medical history. Cluck's beliefs comport with Enterprise company philosophy. Cluck never paid a claim if she had any reason to doubt whether a person's medical history was inconsistent with the health disclaimer included on the insurance application. Cluck rescinded Milford's Policy because she considered the office visit with Dr. Sullivan and the continuation of his angina medication by Dr. Sullivan to constitute treatment for

_____

[3] Both parties agree that under Oklahoma law a claim made more than two years after the effective date of a life insurance policy is generally uncontestable by the insurer.

-6-

triple bypass surgery. Cluck did not investigate whether Sidler was informed of Milford's medical history, did not contact either Sidler or Vining, and did not contact Dr. Sullivan to discuss his notes before rescinding the Policy.

Enterprise's training manual for its agents (the "Manual") emphasizes that applicants only need to be between the ages of 18 and 65 to purchase insurance. The Manual does not discuss the health disclaimer or in any way suggest that the agent is supposed to ask the customer about his health or that health is relevant in issuing the policy. The Manual also encourages agents to maximize profit by overstating the actual monthly premium that should be charged and by secretly increasing the actual amount of monthly payments the customer agrees to pay, for example, raising a payment from $78.22 to $78.99 because customers look more closely at dollars than cents. The Manual informs agents that the life insurance policies they sell are guaranteed issue polices, which means that the coverage is in force immediately as compared to ordinary life insurance applicants who first must be approved by the insurer before coverage takes effect. Enterprise objected to the introduction of the Manual into evidence.

John Myerson ("Myerson") was Enterprise's representative to agents at automobile dealerships that sell Enterprise life insurance policies, including Sidler. Myerson testified that he did not know what the terms used in the health disclaimer statement meant and that he did not know how Enterprise processed

claims. Myerson also testified that he does not train agents to ask about doctor visits or medication.

In response to numerous complaints against Enterprise for improper rescission of life insurance policies, the Oklahoma Insurance Department conducted an investigation of Enterprise's business practices. The Department published the results of its investigation in a 1992 Market Conduct Examination Report (the "Report"). The Report criticized Enterprise for requiring applicants to sign a disclaimer stating that they had never had any health problems. The Report sharply criticized Enterprise's loss ratios, the ratio of benefits paid to premiums received, as being unreasonably below accepted levels due to a large number of policy rescissions. Specifically, Enterprise only paid out in benefits about 16% of premiums received. Oklahoma Insurance Department regulations require a 50% loss ratio for credit life insurance companies. The Report also noted that in numerous cases Enterprise used unlicensed agents to sell insurance policies. Based on the Report, the Oklahoma Insurance Commissioner issued an Order levying a $15,000 fine against Enterprise for various violations and mandating that Enterprise lower its premiums to produce an acceptable loss ratio level. Enterprise made no changes in light of the Report's criticisms. In fact,

loss ratios for the two years following the Report continued to remain below 18%.[4] Enterprise objected to the introduction of the Report into evidence.

Numerous witnesses testified that their decedent spouses had bought life insurance from Enterprise in circumstances similar to the Vinings. Enterprise summarily rescinded these life insurance policies after the survivors made claims on the policies. In each case, Enterprise cited evidence of an insured's health problems that existed at the time the insured signed a health disclaimer statement in the insurance application as the grounds for rescission. Enterprise objected to the introduction of the evidence regarding other claimants.

Finally, John Hammond ("Hammond") testified as an expert on the handling and management of insurance claims. Hammond expressed his opinion that Enterprise's conduct was "completely inappropriate." He stated that Enterprise investigated Vining's claim by looking for a reason to rescind the Policy. Hammond added that Enterprise erred by not contacting either Sidler, the agent who sold the Policy, or Vining before rescinding the Policy. Hammond also criticized Enterprise for not providing claims manuals detailing credit life insurance policy eligibility requirements to its claims examiners who were charged with investigating claims on those policies.

---

[4] Enterprise's rescission conduct and loss ratios bear some resemblance to those of the fictional insurance company portrayed in John Grisham's novel The Rainmaker and in the motion picture of the same name.

The district court gave a series of instructions to the jury on the issue of bad faith, which Enterprise objected to on several grounds. The district court also instructed the jury that it could not award punitive damages in an amount greater than whatever amount, if any, it awarded in actual damages because Vining had not presented sufficient evidence to allow additional punitive damages.

A jury verdict was rendered for Vining in March of 1996 in the amount of $800,000: $400,000 in actual damages and $400,000 in punitive damages. The district court also awarded $163,000 in prejudgment interest at the statutory rate and $94,223.75 in attorneys' fees to Vining. The district court denied Enterprise's motion for judgment as a matter of law under Federal Rules of Civil Procedure 50(b), its motion for a remittitur to reduce an excessive damage award, and its motions to deny the award of prejudgment interest and attorneys' fees. Enterprise now appeals. Enterprise also appeals numerous evidentiary rulings and the district court's instructions to the jury. Vining cross-appeals that in the event a retrial is ordered, the district court should be instructed to remove any limitations on the jury's punitive damage award.

## DISCUSSION

The district court exercised jurisdiction pursuant to 28 U.S.C. § 1332(a) (1994) (diversity jurisdiction). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 (1994) and F.R.A.P. 4(a). We apply the forum state's choice of

law rules.  See Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1532 (10th Cir. 1996).  Both parties agree, and we concur, that under Oklahoma choice of law rules, Oklahoma substantive law applies.

## I. Rule 50 Motion

We consider de novo a district court's denial of a motion for judgment as a matter of law under Rule 50, see Haines v. Fisher, 82 F.3d 1503, 1510 (10th Cir. 1996), using the same standard as the district court, see Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1546 (10th Cir.), cert. denied, 117 S. Ct. 297 (1996).  "[W]e may find error in the denial of such a motion only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion."  Haines, 82 F.3d at 1510.  "We construe the evidence and inferences most favorably to the nonmoving party."  Doan v. Seagate Technology, Inc., 82 F.3d 974, 976 (10th Cir. 1996), cert. denied, 117 S. Ct. 684 (1997).

## A. Bad Faith

Under Oklahoma law, an insurer has a legal duty to "deal fairly and act in good faith with its insured[s]. . . ."  Christian v. American Home Assurance Co., 577 P.2d 899, 904 (Okla. 1977) (citations omitted).  An insured may bring a cause of action in tort for bad faith if the insurer breaches this duty.  See id. at 904-05.  The essence of a bad faith claim centers on the unreasonableness of the insurer's

conduct.  See Conti v. Republic Underwriters Ins. Co., 782 P.2d 1357, 1360 (Okla. 1989).  An insurer does not breach the duty of good faith to pay a claim "by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'"  Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993) (applying Oklahoma law) (internal citations and quotations omitted).  Using the standard for summary judgment of a bad faith claim, a plaintiff may defeat a motion for judgment as a matter of law by presenting enough evidence so that an "insurer's conduct may be reasonably perceived as tortious."  Id. at 1436-37.

Essentially, Enterprise argues on appeal that because it in fact had a legitimate reason for rescinding Milford's Policy based on his medical history and heart condition, Enterprise is entitled as a matter of law to a verdict in its favor on the claim of bad faith.  An insurer does not act in bad faith if it had a "'good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy.'"  Buzzard v. Farmers Ins. Co., 824 P.2d 1105, 1109 (Okla. 1991) (quoting Buzzard v. McDanel, 736 P.2d 157, 159 (Okla. 1987)).  An insurer may legitimately and in good faith dispute a claim based on material misrepresentations in the insured's application for insurance.  See Oulds, 6 F.3d at 1437-39; see also Claborn v. Washington Nat'l Ins. Co., 910 P.2d 1046, 1051 (Okla. 1996).

Vining does not dispute that her husband had a heart condition and that the insurance application he signed included a disclaimer signed by Milford certifying that he was in good health and had not been treated within the preceding 12 months for heart disease or any other cardiovascular disease. As a result, Enterprise could contest liability on the basis of a misrepresentation if it had a good faith belief that the misrepresentation was intentional. See Hays v. Jackson Nat'l Life Ins. Co., 105 F.3d 583, 588 (10th Cir. 1997) (applying Oklahoma law) (rescission must be predicated on intentional misrepresentation). Here, Enterprise reasonably could have determined that by signing the disclaimer, Milford materially misrepresented the condition of his health. In addition, Enterprise might have been able to defend against a bad faith claim based upon the conduct of its agent, Sidler, in selling or issuing the policy because the tort of bad faith "must be based upon an insurer's wrongful denial of a claim; it cannot be based upon the conduct of the insurer in selling and issuing the policy." Id. at 590.

However, even a "legitimate dispute as to coverage will not act as an impenetrable shield against a valid claim of bad faith" where the insured presents "sufficient 'evidence reasonably tending to show bad faith'" or unreasonable conduct. Timberlake Constr. Co. v. U.S. Fidelity & Guar. Co., 71 F.3d 335, 343 (10th Cir. 1995) (applying Oklahoma law) (quoting Oulds, 6 F.3d at 1440). That is, a plaintiff may bring a bad faith cause of action even though a legitimate

-13-

defense to a breach of contract claim exists if the defendant did not actually rely on that defense to deny payment under the policy.

Vining demonstrated at trial a deliberate, willful pattern of abusive conduct by Enterprise in handling claims under its life insurance policies. Vining offered evidence that as a matter of course Enterprise would rescind life insurance policies issued on a guaranteed basis as soon as claims were made. Enterprise based these rescissions on the grounds that the insured had made material misrepresentations on the insurance application regardless of whether Enterprise in fact would have declined to write the policy had it known of that information at the time the policy was written. Vining presented evidence that Enterprise engaged in a systematic, bad faith scheme of canceling policies without determining whether it had good cause to do so. Such conduct constitutes bad faith regardless of whether Enterprise legitimately might have been able to contest Vining's claim based on Milford's heart condition, because the evidence showed that Enterprise, in fact, did not dispute coverage in good faith based on Milford's heart condition.

Enterprise suggests that it would have prevailed on a breach of contract action against it and makes much of Vining's decision to abandon the breach of contract action as helping to demonstrate that fact. However, the jury instructions specifically mandated a finding that Enterprise was required to pay Vining under

the policy before the jury could conclude that Enterprise acted in bad faith. [5]

Because the jury found Enterprise liable, we must assume that the jury found that Enterprise had a duty to pay Vining under the policy.

No court has held that an insured must actually prevail on a separate underlying breach of contract claim in order to maintain a successful bad faith

---

[5] The instructions read in full:

### BAD FAITH FAILURE TO PAY CLAIMS OF INSURED
### ESSENTIAL ELEMENTS

Plaintiff, Billie Vining, claims that defendant, Enterprise Financial Group, Inc., violated its duty of good faith and fair dealing by unreasonably, and in bad faith, refusing to pay plaintiff, Billie Vining, the proper amount for a valid claim under the insurance policy. In order for plaintiff, Billie Vining, to recover damages in this case, she must show by the greater weight of evidence that:

1. Defendant, Enterprise Financial Group, Inc., was required under the insurance policy to pay plaintiff, Billie Vining's, claim;

2. Defendant, Enterprise Financial Group, Inc.'s, refusal to pay the claim in full was unreasonable under the circumstances, because a) it did not perform a proper investigation, or b) it did not evaluate the results of the investigation properly, or c) it had no reasonable basis for the refusal;

3. Defendant, Enterprise Financial Group, Inc., did not deal fairly and in good faith with plaintiff, Billie Vining; and

4. The violation by defendant, Enterprise Financial Group, Inc., of its duty of good faith and fair dealing was the direct cause of the injury sustained by plaintiff, Billie Vining.

With respect to element number one above, you are instructed that the insurance company has raised the affirmative defense of rescission. Thus, if the defendant proves it was entitled to "rescind" the policy, then you must find in favor of the defendant, Enterprise Financial Group, Inc. The elements of the affirmative defense of rescission are defined later in these instructions.

-15-

claim, and we cannot predict that Oklahoma would impose such a condition precedent to a bad faith claim.

## B. Rescission Defense

Enterprise also raises the affirmative defense of rescission. Under Okla. Stat. tit. 36, § 3609 (1990), an insurer properly may rescind an insurance policy when the application contains a misrepresentation that (1) is fraudulent; (2) is material to the insurance company's acceptance of the risk; or (3) induced the insurer to issue the policy where it would not have done so had it known the true facts. However, Enterprise concedes that "section 3609 requires a finding of intent to deceive before an insurer can avoid the policy . . . . [A] statement made without intent to deceive is not a misrepresentation at all, and thus does not invoke section 3609." Hays, 105 F.3d at 588. Because Enterprise also admits that Milford did not willfully or intentionally misrepresent his health history on the application, Enterprise cannot rely on the affirmative defense of rescission.

## II. Jury Instructions

Enterprise challenges the district court's instructions to the jury regarding legitimate disputes between an insurer and its insured, the definition of material misrepresentations by an insured on an insurance application, and the imputation of knowledge by an insurance agent to the insurance company.

We review the district court's refusal to give a particular jury instruction for abuse of discretion. In assessing whether the court properly exercised that discretion, a reviewing court must examine the instructions as a whole to determine if they sufficiently cover the issues in the case on the facts presented by the evidence. The question of whether a jury was properly instructed is a question of law, and thus, our review is de novo.

United States v. Voss, 82 F.3d 1521, 1529 (10th Cir.), cert. denied, 117 S. Ct. 226 (1996) (quoting United States v. Lee, 54 F.3d 1534, 1536 (10th Cir. 1995)).

## A. Legitimate Disputes

The district court utilized the Oklahoma Uniform Jury Instruction (OUJI) for bad faith when submitting the case to the jury. The instructions stated that the jury could find bad faith if, inter alia, the insurer "had no reasonable basis" for refusing the Policy. Enterprise complains that the jury instruction improperly suggests that bad faith may occur even if a reasonable basis for refusing to pay the claim might exist. Although Enterprise correctly reads the instruction, it does not follow that the instruction failed correctly to state Oklahoma law. Bad faith may be established by showing an "unreasonable" refusal to pay a claim, and the instructions set forth three alternative scenarios which are deemed to be unreasonable: (1) the insurance company "had no reasonable basis for the

-17-

refusal," (2) the insurance company did not perform a proper investigation, or (3) the insurance company did not evaluate the results of the investigation properly. As we pointed out earlier, merely because there is a reasonable basis that an insurance company could invoke to deny a claim does not necessarily immunize the insurer from a bad faith claim if, in fact, it did not actually rely on that supposed reasonable basis and instead took action in bad faith. Timberlake, 71 F.3d at 343. Because the jury instruction correctly stated the applicable law, we review the instruction for abuse of discretion in the particulars of its wording. We do not believe that the use of the standard Oklahoma instructions for bad faith cases constitutes an abuse of discretion.

## B. Material Misrepresentations and Rescission

The district court quoted verbatim the language of the Oklahoma statute regarding an insurer's ability to rescind an insurance contract to instruct the jury on the affirmative defense of rescission. See Okla. Stat. tit. 36, § 3609(A) (1990) (allowing rescission where applicant misrepresents material facts on an insurance application). Enterprise contends that the court also should have included an instruction quoting a Tenth Circuit case defining the term "material" for the purposes of instructing the jury how to identify what constitutes a material

misrepresentation on an insurance application.[6]  Enterprise's challenge to this jury

instruction is now moot given Enterprise's admissions that the statute only applies

if the insured intentionally deceived the insurer and that Milford did not possess

any such intent in this case.

## C.  Imputed Knowledge

The district court instructed the jury using an OUJI instruction that notice

of information conveyed to the agent by the insured is imputed to the insurer

under agency principles.[7]  Enterprise challenges this instruction in light of settled

law that a bad faith action against an insurance company cannot rest on the

actions of that company's agent.  See Oulds, 6 F.3d at 1440.  As a result,

Enterprise complains, the instruction misstated the law by allowing the jury to

find that Enterprise acted in bad faith based on knowledge it should have had

---

[6]  Specifically, Enterprise wished to quote Long v. Insurance Co., 670 F.2d 930, 934 (10th Cir. 1982), as follows:  "A misrepresented fact is material if a reasonable insurance company in determining its course of action would attach importance to the fact misrepresented."

[7]  The instructions read as follows:
KNOWLEDGE OF AGENT IMPUTABLE TO PRINCIPAL
Knowledge, or notice possessed by an agent while acting within the scope of his authority, is the knowledge of, or notice to, his principal.
ACTS OF AN AGENT AS ACTS OF PRINCIPAL
Nancy Sidler was the agent of defendant, Enterprise Financial Group, Inc., at the time she sold the insurance policy to plaintiff's husband, Milford Vining.  Therefore, an act or omission of Nancy Sidler within the scope of her authority at the time was in law the act or omission of defendant, Enterprise Financial Group, Inc.
. (Appellant App. Vol. III at 773 & 774).

-19-

because of information communicated to Sidler by Milford about his condition. However, Vining never introduced any testimony regarding Milford's disclosures to Sidler. In fact, Vining concurred in Enterprise's Motion in Limine to exclude as hearsay any evidence regarding communications between Milford and Sidler. As a result, Sidler's knowledge of Milford's condition was never at issue at trial. Vining's claim rests on her showing that Enterprise operated a bad faith insurance scheme and denied her claim as a matter of course without any investigation or justification. Sidler's knowledge is irrelevant to that showing. In other words, even if the instruction was in error, it could not have affected the verdict, and Enterprise was not prejudiced thereby.[8] See Osteguin v. Southern Pac. Trans. Co., ___ F.3d ___, 1998 WL 257224, at *2 (10th Cir. May 21, 1998); see also Fed. R. Civ. P. 61 (the court "must disregard any error or defect . . . which does not affect the substantial rights of the parties").

---

[8] Enterprise also cannot complain about any prejudicial effect of the jury instruction on its claimed rescission defense because, as discussed above, it has conceded that defense away on appeal.

### III. Remittitur on Damage Award

Enterprise challenges the damages awarded to Vining as excessive and as lacking sufficient evidentiary support.[9] First, we review a damage award challenged on the basis of insufficient evidence under a clearly erroneous standard, "viewing the evidence in the light most favorable to the prevailing party." Rainbow Travel Serv., Inc. v. Hilton Hotels Corp., 896 F.2d 1233, 1239 (10th Cir. 1990). We affirm the judgment below if there is substantial evidence tending to support the jury's damage award. Rainbow Travel, 896 F.2d at 1239. Second, we review for "manifest abuse of discretion" a court's disposition of a motion for remittitur or new trial on damages to reduce an excessive award. Malloy v. Monahan, 73 F.3d 1012, 1017 (10th Cir. 1996). The award must be so excessive that it shocks the judicial conscience and raises "'an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial. . . .'" Fitzgerald v. Mountain States Tel. & Tel. Co., 68 F.3d 1257, 1261 (10th Cir. 1995) (quoting Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 703 F.2d 1152, 1168 (10th Cir. 1981)).

---

[9] Enterprise sought a remittitur of not less than $350,000 in actual damages, which would reduce the actual damages to $50,000 and consequentially also reduce the punitive damages, which the district court ruled could not exceed actual damages, to $50,000.

Given the special nature of an insurer's relation to its insureds, recovery for mental suffering in a bad faith insurance claim does not require either severe mental distress or outrageous conduct. See Timmons v. Royal Globe Ins. Co., 653 P.2d 907, 916 (Okla. 1982). Vining testified at trial regarding the distress she experienced as a result of Enterprise's conduct towards her during the three years she spent fighting the insurance company over the claim. Such evidence is sufficient in a bad faith claim to support an award for emotional distress.

In addition, $400,000 for mental pain and suffering, financial losses, embarrassment, and loss of reputation in the context of bad faith insurance claims is not excessive on this record. See, e.g. Buzzard, 824 P.2d at 1116 (noting that the district court awarded $200,000 for mental distress caused by delay in withholding a $10,000 insurance payment over seven and one half months).

Enterprise also claims in the alternative that the jury verdict was the result of undue passion and prejudice based on its consideration of certain evidence erroneously admitted by the district court. Because we do not believe the district court abused its discretion on the challenged evidentiary rulings (see discussion below), we reject Enterprise's prejudice claim. In addition, Enterprise did not contest the punitive damage award directly. Rather, Enterprise sought to reduce the amount of punitive damages by seeking a reduction in actual damages, noting that the district court limited punitive damages to an amount not to exceed actual

damages.  Because we uphold the $400,000 actual damage amount, the $400,000

in punitive damages does not exceed actual damages and need not be adjusted.

Therefore, by affirming the actual damage award, we also necessarily affirm the

punitive damage award.

## IV.  Evidentiary Rulings

Enterprise appeals a number of the district court's rulings admitting various

evidence unfavorable to Enterprise, contending that the evidence unfairly

poisoned the well against it.  We review a district court's ruling on the admission

or exclusion of evidence for abuse of discretion.  See Cartier v. Jackson, 59 F.3d

1046, 1048 (10th Cir. 1995).

## A.  Market Conduct Examination Report

The district court allowed into evidence the 1992 Market Conduct

Examination Report (the "Report") prepared by the Oklahoma Insurance

Department concerning Enterprise's business practices.  Enterprise challenges the

admission of the evidence on both hearsay and relevance grounds.  Enterprise

argues that a report prepared for a state agency does not meet the hearsay

exception in Fed. R. Evid. 803(8)(C) for factual findings resulting from an

investigation made pursuant to authority granted by law unless and until the

agency actually adopts the findings in the report.  Specifically, Enterprise quotes

Brown v. Sierra Nevada Mem'l Miners Hosp. 849 F.2d 1186 (9th Cir. 1988):

"where 'a staff report is submitted to a commission or other public agency charged with making formal findings, only those factual statements from the staff reports that are approved and adopted by the agency will qualify as 803(8)(C) findings.'" Id. at 1189 (quoting Zenith Radio Corp. v. Matsushita Elec. Ind. Co., 505 F. Supp. 1125, 1145 (E.D. Pa. 1980)); see also City of New York v. Pullman, Inc., 662 F.2d 910, 914-15 (2d Cir. 1981) (interim reports subject to revision and review, tentative results of an incomplete staff inspection, and preliminary recommendations not yet accepted or adopted by the agency do not constitute factual findings under Rule 803(8)(C)).

Enterprise concludes that the agency did not adopt the Report in this case because the Oklahoma Insurance Commissioner subsequently issued an Order with respect to Enterprise following the Report. The Order states that "the violations described herein at paragraph 7 (Findings of Fact) shall be incorporated into the examination Report as if expressly set forth therein, and shall constitute the only legal violations set forth in the Examination Report." However, the Order also states under a section entitled "Conclusions of Law" that "the Examination Report of Enterprise Life Insurance Company shall be and hereby is adopted as modified in this Order by the Insurance Commissioner, pursuant to 36 O.S. § 309.4(C) (Supp. 1992), with actions to be taken by Enterprise Life

-24-

Insurance Company to cure the violations noted therein." In addition, the Report was attached and incorporated into the Order as "Exhibit A" of the Order.

Just because the Order did not characterize all of Enterprise's business practices documented in the Report as legal violations does not mean that the Order did not incorporate the factual findings contained in the Report. Instead, a more reasonable interpretation is that the Order relies on and adopts all of the factual findings in the Report but only characterizes certain of those findings as constituting a violation of law. Moreover, Enterprise does not dispute and indeed fully supports the position that the Order was admissible, arguing only that the Order and not the Report should have been admitted. Because the Report is attached and incorporated by reference into the Order, the Report would have been properly admitted as part of the Order even if the Report by itself were inadmissible.

On the question of relevance, Enterprise claims the Report was not relevant because the evidence it revealed regarding Enterprise's general conduct was not specific to this case. Enterprise also argues that the Report unfairly prejudiced the jury against it. Determinations of relevance and prejudice under Rule 403 lie within the discretion of the district court. See United States v. Wacker, 72 F.3d 1453, 1468-69 (10th Cir. 1995), cert. denied, 117 S. Ct. 136 (1996). Vining sought to prove that Enterprise engaged in a pervasive, consistent pattern of

abusive rescissions. Such evidence is clearly relevant to the question of how Enterprise acted in this case under Federal Rule of Evidence 406 (habit). While the evidence may have worked to prejudice the jury against Enterprise, such prejudice did not substantially outweigh the relevance of the evidence to the inquiry of Enterprise's general business practices. Thus, we find that the district court did not abuse its discretion by admitting the Report into evidence.

## B. Expert Witness

Enterprise challenges the district court's decision to allow Hammond to testify as an expert witness. The admission of expert testimony is left to the sound discretion of the trial court. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Enterprise's main challenge to the admission of expert witness Hammond's testimony seems to stem from the fact that Hammond routinely testifies in bad faith insurance cases. See, e.g. Timberlake, 71 F.3d at 345; Thompson v. State Farm Fire and Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994). Enterprise also argues that Hammond's testimony should have been excluded because he made conclusions of fact properly reserved for the jury, specifically his conclusion that Enterprise did not have appropriate grounds to rescind the Policy. However, because the rescission defense is a moot point, we do not see how Hammond's testimony on that issue matters in this case. In addition, this court in Thompson, 34 F.3d at 941, ruled that "it is plainly within

the trial court's discretion" to determine whether expert testimony is admissible when the expert offers to testify on an issue that a jury is capable of assessing for itself. Thus, the district court did not abuse its discretion by allowing Hammond to testify.

### C. Other Evidence

Enterprise challenges the introduction of Enterprise's Training Manual (the "Manual") and the testimony of other Enterprise credit life insurance claimants on grounds that such evidence was irrelevant, unduly prejudicial, and confusing under Federal Rules of Evidence 403 & 404. Relevance and prejudice are matters within the discretion of the district court. See Wacker, 72 F.3d at 1468-69. Enterprise argues that the Manual should not have been admitted because Vining did not show that Sidler, the agent in this case, ever read or even saw a copy of the Manual. In addition, Enterprise contests the admissibility of the testimony of other claimants. The other claimants testified about their purchase of life insurance policies and the subsequent rescission of those policies by Enterprise despite their disclosures to Enterprise agents concerning prior health problems. Enterprise argues that such testimony was not relevant because Vining did not show in this case that Milford actually disclosed his medical condition.

Nevertheless, Vining's case of bad faith was based on demonstrating a pervasive, consistent pattern of abuse by Enterprise. Clearly, the Manual and

evidence regarding how Enterprise treated other claimants were all relevant to that exercise. Such evidence is expressly allowed under Federal Rule of Evidence 406. The only impact such evidence might have had on the jury was to convince them that Enterprise habitually denied claims in bad faith, precisely the point Vining wished to prove. Allowing such evidence to be admitted, therefore, did not constitute an abuse of discretion.

### V. Additional Punitive Damages for Willful Conduct

Finally, we dispose of Vining's cross-appeal. Vining argues that if the case is retried for any reason, the district court should lift the limitation on punitive damages imposed by the court on any jury award. Because we affirm the district court's denial of Enterprise's motion for judgment as a matter of law, the cross-appeal has become moot.

### CONCLUSION

Vining presented sufficient, admissible evidence showing that Enterprise willfully engaged in a bad faith, abusive scheme of issuing guaranteed insurance policies and then routinely denying coverage to its insureds regardless of whether it had reasonable grounds for the rescission. Vining also showed that Enterprise acted unreasonably in this case and that such bad faith conduct caused her emotional distress, pain, and anguish. Therefore, we AFFIRM the jury verdict

finding that Enterprise acted in bad faith, AFFIRM the jury verdict awarding damages to Vining, and REMAND for the entry of judgment consistent with this opinion.