**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 22, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
————————————————————

DAVID EDENS and RHONDA EDENS,
individually and as next of kin of Zachery
Edens, deceased; EDENS STRUCTURAL
SOLUTIONS LLC,

     Plaintiffs - Appellants,

v.

THE NETHERLANDS INSURANCE
COMPANY,

     Defendant - Appellee.

No. 15-5092

————————————————————

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:14-CV-00377-GKF-TLW)**
————————————————————

Jody R. Nathan (Neal E. Stauffer, Lawrence W. Zeringue, and Timothy P. Clancy, with
counsel on the briefs), Stauffer & Nathan, Tulsa, Oklahoma, for Plaintiffs-Appellants.

William W. O'Connor (Keith A. Wilkes, Jerrick L. Irby, and Harrison M. Kosmider, with
counsel on the brief), Newton, O'Connor, Turner & Ketchum P.C., Tulsa, Oklahoma, for
Defendant-Appellee.
————————————————————

Before **LUCERO**, **GORSUCH**, and **PHILLIPS**, Circuit Judges.
————————————————————

**PHILLIPS**, Circuit Judge.
————————————————————

Zachery Edens was killed in a roadway accident when an oncoming car turned in front of his motorcycle. David Edens, Zachery Edens's father and the Chief Executive Officer of Edens Structural Solutions LLC (Edens LLC), and Rhonda Edens, Zachery Edens's mother, sent a demand letter to The Netherlands Insurance Company (Netherlands), claiming that Zachery Edens was an insured under Edens LLC's Netherlands insurance policy and demanding $1,000,000 in underinsured-motorist benefits. After Netherlands denied coverage, David Edens, Rhonda Edens, and Edens LLC sued Netherlands.

On summary judgment, the district court concluded that David Edens was an insured under the policy because he was an executive officer of Edens LLC, and that Zachery Edens was an insured as David Edens's family member. Even so, because David and Rhonda Edens owned Zachery Edens's motorcycle, the district court concluded that the Netherlands policy didn't cover his accident. David and Rhonda Edens and Edens LLC have appealed, arguing, among other things, that the policy's coverage terms were ambiguous and should be construed in their favor. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

On May 8, 2013, 22-year-old Zachery Edens was driving a motorcycle owned by his parents, David and Rhonda Edens (the Edenses). As Zachery Edens was driving northbound on a two-way street in Tulsa, Oklahoma, Neva Whiteman turned left in front of his oncoming motorcycle from her southbound lane. Unfortunately, Zachery Edens couldn't avoid a collision and was pronounced dead at the scene. The

2

Edenses had insured the motorcycle under their policy with Progressive Insurance, and Whiteman had insured her car under her policy with State Farm Insurance.

In a letter dated September 5, 2013, the Edenses, through counsel, notified Netherlands of Zachery Edens's accident. In their letter, they claimed that a Netherlands policy issued to Edens LLC covered the accident. Specifically, they claimed that Zachery Edens was "a named insured" under the policy's underinsured/uninsured motorist (UM) coverage "because he was a member of the LLC listed as a named insured." R. vol. 1 at 52. The letter demanded payment of the $1,000,000 policy limits.

On the accident date, Edens LLC did indeed have an auto[1] policy in force with Netherlands. The standard policy provided liability coverage for autos that Edens LLC employees used during the course of business (the Policy). Under two separate endorsements, the Policy also provided UM coverage to certain insureds up to $1,000,000 per accident.

In a September 18, 2013 letter, Netherlands advised the Edenses that it needed additional information to evaluate their demand, including documents verifying Zachery Edens's relationship with Edens LLC, copies of invoices for funeral expenses, and "[c]opies of any insurance coverage Zachery Edens had on the motorcycle he was riding when this loss occurred." R. vol. 2 at 547. Despite soliciting this information, Netherlands's letter ended inconsistently, saying, "Based

---

[1] We follow the insurance policy's lead and use "auto" instead of "automobile" throughout this opinion.

on the above, I will be closing this file at this time. Should you receive any additional communications regarding this matter, or be served with a lawsuit, please contact me or Michael Woodson Attorney immediately." *Id.* at 548. Alison Hood, the claims adjuster who drafted and signed the September 18 letter, later swore in her affidavit that this file-closing language was "accidental and a mistake." *Id.* at 550.

In fact, instead of closing the file, Hood said that on September 19, 2013, she spoke with the Edenses' counsel, requesting "information pertinent" to her investigation of their claim. *Id.* at 551. In Hood's claim notes for that call, she wrote that she had "explained that I had already mailed a letter advising of the information needed so it will be duplicate to the call." R. vol. 3 at 556 (capitalization altered). Hood never received a response to her September 18 letter or any of the requested documents.

On November 22, 2013, Hood drafted and sent a letter to the Edenses' counsel denying coverage and explaining that, from the documents Netherlands could obtain, Zachery Edens wouldn't qualify as an insured under the Policy's UM coverage. Hood never received a response to her November 22 letter, and on January 7, 2014, she closed the Edenses' file.

On July 9, 2014, the Edenses and Edens LLC (collectively, "Plaintiffs") sued Netherlands. In their complaint, Plaintiffs alleged five claims: (1) "Netherlands failed to adequately investigate the claim"; (2) "Netherlands acted negligently in the evaluation and denial of Plaintiffs' claim"; (3) "Netherlands failed to follow applicable Oklahoma law in the investigation and evaluation of Plaintiffs' claim,"

4

thereby breaching the Oklahoma Unfair Claims Settlement Practices Act, Okla. Stat. tit. 36, §§ 1250.1–1250.17 (2015); (4) Netherlands "breach[ed] . . . the insurance policy"; and (5) Netherlands acted in "bad faith." R. vol. 1 at 13.

The parties moved for summary judgment. The district court granted Netherlands's summary-judgment motion, relying on a Policy provision disallowing UM coverage for insureds injured while occupying an auto owned by Edens LLC executive officers or their family members. Although the district court found that David Edens was an executive officer of Edens LLC, meaning that Zachery Edens would qualify as an insured, the district court still held that the Policy didn't cover Zachery Edens's accident because David Edens owned the motorcycle Zachery Edens was occupying. This being so, the district court dismissed all of Plaintiffs' claims. Plaintiffs timely appealed.

## DISCUSSION

Plaintiffs appeal the district court's grant of Netherlands's motion for summary judgment. Specifically, they argue five points: (1) the district court erroneously concluded that the Policy unambiguously excluded UM coverage for Zachery's accident; (2) the district court erroneously considered the Policy's exclusion despite Netherlands's failure to produce in discovery a complete version of the Policy in effect at the time of Zachery's accident; (3) Netherlands failed to timely provide a privilege log and, therefore, it waived any alleged privilege regarding its claim file; (4) the district court erred in dismissing Plaintiffs' bad-faith claim; and (5) the district court erred in failing to conclude that the UM coverage would stack in

5

this case (providing $1 million in coverage for each of the 24 separate premiums paid for UM coverage). We address each of these claims in turn and affirm the district court's grant of summary judgment in Netherlands's favor.

"We review a district court's decision to grant summary judgment de novo, applying the same legal standard the district court used." *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1277 (10th Cir. 2011). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A.     Whether the Policy Is Ambiguous

Plaintiffs first argue that the Policy's coverage terms are ambiguous and should be construed in their favor. We disagree. To explain why, we first review Oklahoma's approach to construing insurance policies. Second, we provide an overview of the Policy. Third, we address Netherlands's argument that Plaintiffs have waived or forfeited their ambiguity argument. Finally, we address whether the Policy's coverage terms are ambiguous.

### 1.     Interpreting Insurance Policies Under Oklahoma Law

"In diversity cases, the substantive law of the forum state governs the analysis of the underlying claims . . . ." *Haberman v. Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006). Under Oklahoma law, "an insurance policy is a contract. When its terms are unambiguous and clear, the employed language is accorded its ordinary, plain meaning and enforced so as to carry out the parties' intentions." *Bituminous*

6

*Cas. Corp. v. Cowen Constr., Inc.*, 55 P.3d 1030, 1033 (Okla. 2002) (emphasis omitted). But when a policy's language is ambiguous—or when an exclusion within a policy is masked by technical or obscure language or hidden in the policy's provisions—Oklahoma courts apply the doctrine of reasonable expectations. *Am. Econ. Ins. Co. v. Bogdahn*, 89 P.3d 1051, 1054 (Okla. 2004). "Under the reasonable expectations doctrine, when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean." *Id.* (citing *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861, 870 (Okla. 1996)). "The reasonable expectation doctrine is a double-edged sword— both parties to the insurance contract may rely upon their reasonable expectations." *Max True*, 912 P.2d at 866. "Whether the language is ambiguous is a question of law," *Am. Econ. Ins.*, 89 P.3d at 1054 (citing *Wynn v. Avemco Ins. Co.*, 963 P.2d 572, 575 (Okla. 1998)), and "[t]he test for ambiguity is whether the language 'is susceptible to two interpretations on its face . . . from the standpoint of a reasonably prudent lay person, not from that of a lawyer,'" *id.* (omission in original) (quoting *Cranfill v. Aetna Life Ins. Co.*, 49 P.3d 703, 706 (Okla. 2002)).

With these interpretative tools in hand, we turn to the Policy's language.

### 2.  Policy Roadmap

The Policy contains a "Commercial Auto Coverage Part," which "consists of a Declarations, a Business Auto Coverage Form . . . , Common Policy Conditions[,] and Endorsements, if applicable." R. vol. 2 at 504. Coverage in this case turns on

7

disputed language in the Policy's Business Auto Extension Endorsement, but, before focusing on that endorsement, we first review other Policy provisions to show how that endorsement fits within the broader Policy. *See Wynn*, 963 P.2d at 575 ("An insurance policy will be liberally construed so as to give a reasonable effect to all of its provisions." (citing *Dobson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991))).

### i.      Business Auto Coverage Form

We begin with the Business Auto Coverage Form, which provides general auto-accident liability coverage: "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." R. vol. 2 at 514. It provides no UM coverage.

Generally, the Business Auto Coverage Form insures only "[y]ou for any covered 'auto,'" and "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow . . . ." *Id.* The Business Auto Coverage Form defines "you" as "the Named Insured shown in the Declarations." *Id.* at 513. In its Declarations, the Policy lists three business entities as Named Insureds: Edens Structural Solutions LLC, Edens Construction LLC, and Edens Surface Scanning LLC. Thus, the Business Auto Coverage Form provides liability coverage to these three "Named Insureds" and anyone using a "covered 'auto'" with a Named Insured's permission. The Declarations lists all covered autos and doesn't list the Edenses' motorcycle.

8

### ii.  Oklahoma Uninsured Motorist Coverage

The Policy also includes an "Oklahoma Uninsured Motorists Coverage" endorsement, which sometimes provides UM coverage to certain insureds. This endorsement "modifies[2] insurance provided under the . . . Business Auto Coverage Form" to include UM coverage[3] for "insureds." *Id.* at 525 (capitalization altered). When, as here, the "Named Insureds" in the "Declarations" are limited-liability companies, the "Who Is An Insured" section of the endorsement includes these persons as "insureds":

> a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>
> b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

*Id.* at 525–26.

Zachery Edens isn't an "insured" under Section 2(a), because, during his accident, he wasn't "'occupying' a covered 'auto,'" that is, an auto listed in the Declarations for which a UM-coverage premium is shown.[4] Nor is he an "insured"

---

[2] Here, "modifies" more specifically means "supplements." Because the Business Auto Coverage Form never provides UM coverage, the Oklahoma Uninsured Motorists Coverage endorsement's UM coverage is independent from the Policy's liability coverage.

[3] The UM coverage specifically provides that Netherlands "will pay . . . all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an [uninsured or underinsured motor vehicle]." R. vol. 2 at 525.

[4] We arrive at this conclusion via the following route: The Business Auto Coverage Form provides that "Item Two of the Declarations shows the 'autos' that

under Section 2(b), because his accident didn't involve an injury to another insured. Thus, Zachery Edens wouldn't have been able to meet the Oklahoma Uninsured Motorists Coverage endorsement's definition of "insured." Again, we note this to illustrate the inner workings of the Policy.

### iii. Business Auto Extension Endorsement

This leaves Plaintiffs one possible avenue for UM coverage—the Business Auto Extension Endorsement. Importantly for our purposes, this endorsement supplements the UM coverage as added to the Business Auto Coverage Form by the Oklahoma Uninsured Motorists Coverage endorsement. At the heart of this appeal is the parties' dispute about whether Section 17 of the Business Auto Extension Endorsement (entitled "Drive Other Car for Executive Officers") covers Zachery Edens's fatal accident. *Id.* at 502 (capitalization altered). We begin by observing that Section 17(A) provides that Section 17 "changes only those coverages where a limit and premium is shown in the Declarations." *Id.* That poses no problem here, though, since Item Two of the Declarations shows a limit and premium for "uninsured motorists" coverage. *Id.* at 471.

Section 17(C) provides in full:

---

are covered 'autos' for each of your coverages. The following numerical symbols describe the 'autos' that may be covered 'autos'. The symbols entered next to a coverage on the Declarations designate the only 'autos' that are covered 'autos'." R. vol. 2 at 513. Under Item Two of the Declarations, a table shows a number "7" under the "covered autos" column, next to the "uninsured motorists" coverage. *Id.* at 471 (capitalization altered). Under the "following numerical symbols" table in the Business Auto Coverage Form, the number "7" corresponds to "[o]nly those 'autos' described in Item Three of the Declarations for which a premium charge is shown." *Id.* at 513.

10

C.     CHANGES IN AUTO MEDICAL PAYMENTS AND UNINSURED MOTORISTS AND UNDERINSURED MOTORISTS COVERAGE

The following is added to WHO IS AN INSURED:

Any individual "insured" and his or her "family members" are "insured" while "occupying" or while a pedestrian when being struck by any "auto" you do not own except:

Any "auto" owned by that individual or by any "family member".

*Id.* at 502. Each party maintains that this language unambiguously supports its position.

### 3.    Waiver and Forfeiture

Before determining whether Section 17(C) is ambiguous, we must address Netherlands's argument that Plaintiffs have waived or forfeited that issue. Specifically, Netherlands argues that Plaintiffs "have waived and/or forfeited any argument that Section 17(C) . . . is ambiguous" because Plaintiffs argued in the district court that Section 17(C) unambiguously provided coverage for Zachery Edens's accident, never alternatively arguing that it was ambiguous. Appellee's Resp. Br. at 30 (capitalization altered). Similarly, Netherlands argues that Plaintiffs have waived or forfeited any argument that they should prevail under the reasonable-expectations doctrine if a court determines that Section 17(C) is ambiguous. Because Plaintiffs didn't argue for the reasonable-expectations doctrine in the district court, Netherlands contends that Plaintiffs can't argue the doctrine's application on appeal.

11

To address Netherlands's waiver and forfeiture arguments, we look to *American Economy Insurance*, an Oklahoma Supreme Court case that outlines when the reasonable-expectation doctrine even applies:

The doctrine of reasonable expectations may be applied only when

(1) the challenged policy language is ambiguous, or

(2) an exclusion within the policy is

    (a) masked by technical or obscure language, or

    (b) hidden in a policy's provisions.

*Am. Econ. Ins.*, 89 P.3d at 1054 (citing *Max True*, 912 P.2d at 870). On appeal, Plaintiffs argue that the reasonable-expectations doctrine applies because Section 17(C)'s language is ambiguous or, alternatively, because the Policy's "exclusions are hidden in other policy provisions." Appellants' Opening Br. at 19. In other words, they argue that the reasonable-expectations doctrine applies under *American Economy Insurance*'s section (1) and section (2)(b). In response, Netherlands points out that Plaintiffs never argued ambiguity in the district court. Addressing Plaintiffs' alternative argument under paragraph 2(b), Netherlands contends that "Section 17(C) is not an exclusion," which, it says, renders Plaintiffs' section (2)(b) argument "moot." Appellee's Resp. Br. at 20.

Consistent with Netherlands's account, we see nothing in the Plaintiffs' summary-judgment briefing even alternatively arguing that any of the disputed Policy

12

language is ambiguous.[5] *But cf. Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 531 (10th Cir. 2016) (concluding that appellee hadn't waived or forfeited an ambiguity argument where the appellee had alternatively argued in the district court that a contract was at least ambiguous). But because we see nothing intentional about Plaintiffs' failure to argue ambiguity in the district court, we disagree that they have waived their ambiguity argument.[6] *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011) ("If [a legal] theory was intentionally relinquished or abandoned in the district court, we usually deem it waived and refuse to consider it."). At most, Netherlands can argue that Plaintiffs forfeited their ambiguity argument by neglecting to raise it in the district court. *See id.* at 1128 ("[I]f the theory simply wasn't raised before the district court, we usually hold it forfeited.").

But we conclude that Plaintiffs haven't even forfeited their ambiguity argument. To us, when Plaintiffs argued in the district court that Section 17(C) unambiguously covers Zachery Edens's accident, their argument required the district court to decide whether Section 17(C) is ambiguous. In other words, confronted on

---

[5] Plaintiffs assert that they argued ambiguity and the reasonable-expectations doctrine in the district court, citing their Second Motion in Limine. But the Second Motion in Limine mentions ambiguity and the reasonable-expectations doctrine only in a paragraph quoting Oklahoma courts' approach to interpreting adhesion contracts. *See* R. vol. 1 at 225 (citing *Max True*, 912 P.2d at 865). This passing mention to ambiguity and the reasonable-expectations doctrine doesn't suffice for us to conclude that Plaintiffs sufficiently raised these issues.

[6] Netherlands argues that Plaintiffs waived their ambiguity argument when they "chose to forego" making one in the district court. Appellee's Resp. Br. at 31. Yet Netherlands's only support for this proposition is Plaintiffs' failure to cite a certain case Netherlands characterizes as "seminal." *Id.* We don't see this failure as proof of an intentional waiver of the ambiguity argument.

summary judgment with two competing interpretations of Section 17(C), the district court needed to decide whether Section 17(C) was reasonably susceptible to each of the parties' rival readings and was therefore ambiguous.[7] Because we now face this same issue, we conclude that Plaintiffs haven't forfeited their ambiguity argument.

Although we believe the ambiguity issue is properly before us, we don't think the same about the issue of the reasonable-expectations doctrine. Plaintiffs failed to raise the reasonable-expectations-doctrine issue in the district court and may well have forfeited it on appeal. And Plaintiffs haven't attempted to meet a plain-error standard of review. *See id.* ("[W]e will entertain forfeited theories on appeal, but we will reverse a district court's judgment on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result."). But because we conclude that the Policy is unambiguous, we need not address Netherlands's assertion that Plaintiffs have forfeited their arguments under the reasonable-expectations doctrine.

Unlike Plaintiffs' ambiguity argument, which survives on appeal, Plaintiffs' one-paragraph argument that the Policy's "exclusions are hidden in other policy provisions" is too little, too late. Appellants' Opening Br. at 19. In the district court, Plaintiffs never argued that Netherlands had hidden an exclusion within the Policy,

---

[7] We also note that Netherlands's summary-judgment briefing before the district court somewhat contradicts its current position that Plaintiffs never argued ambiguity when Plaintiffs argued that Section 17(C) unambiguously covered Zachery Edens's accident. In Netherlands's reply brief in the district court, Netherlands dedicated a section to ambiguity, the section header reading: "If there is an ambiguity it must be resolved with the reasonable expectations doctrine." R. vol. 3 at 747 (capitalization altered).

14

and, on appeal, Plaintiffs haven't argued for plain-error review. *See Richison*, 634 F.3d at 1131 ("[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court."). Having forfeited their hidden-exclusion argument, we proceed to analyze only whether Section 17(C) is ambiguous.

### 4. Business Auto Extension Endorsement's Section 17(C) Is Unambiguous

On appeal, Plaintiffs argue that Section 17(C) is ambiguous because it is "reasonably susceptible to more than one meaning on its face." Appellants' Opening Br. at 13. We reproduce Section 17(C)'s language here:

> C. CHANGES IN AUTO MEDICAL PAYMENTS AND UNINSURED MOTORISTS AND UNDERINSURED MOTORISTS COVERAGE
>
> The following is added to WHO IS AN INSURED:
>
> Any individual "insured" and his or her "family members" are "insured" while "occupying" or while a pedestrian when being struck by any "auto" you do not own except:
>
> Any "auto" owned by that individual or by any "family member".

R. vol. 2 at 502. Plaintiffs argue that Section 17(C) can reasonably be read to "cover[] Zachery Edens, a family member of David Edens, [because] he was struck by an auto not owned by the named insured, Edens [LLC], nor by any of the Edens[es]." Appellants' Opening Br. at 12. From this, we see that Plaintiffs posit that what really matters is who owned the auto that *struck* Zachery Edens and his motorcycle, not who owned the auto (motorcycle) that he *occupied*.

15

Unfortunately, Plaintiffs' briefs never explain how they read Section 17(C) to reach that meaning. So at oral argument, we asked Plaintiffs' counsel to tell us. After acknowledging the obvious fact that Zachery Edens was not injured as a pedestrian, Plaintiffs' counsel offered this reading of Section 17(C) to plausibly support coverage (with words she skipped stricken and words she added bracketed):

> Any individual ~~"insured"~~ and his ~~or her~~ "family members" are "insured" while "occupying" or ~~while a pedestrian~~ when being struck by any "auto" you do not own except [for]:

> ~~Any~~ [An] "auto" owned by that individual or by any "family member".

Oral Arg. at 4:20–4:52. We conclude that this reading is insufficient to provide a plausible alternative reading showing ambiguity.

### i. "While a Pedestrian" Can't Be Separated from "When Being Struck By"

For several reasons, Plaintiffs cannot discard "while a pedestrian" and cling to "when being struck by." First, as written, the Policy language covers two mutually exclusive categories of insureds: (1) insureds injured while occupying an auto not owned by Edens LLC or an Edens family member, and (2) insureds injured while pedestrians when being struck by any such auto. To support this statement, we need look no further than Section 17(C)'s two "whiles" and the "or" separating them. Each "while" covers its own ground—one for when insureds are occupying an auto, and one for when insureds are pedestrians. Second, despite Plaintiffs' effort to create a third "while" by ignoring "while a pedestrian" and picking up with "when being struck by," they can't legitimately strike Policy language to reach a favored

16

interpretation. Third, to strike "while a pedestrian," the Plaintiffs would have to separate a restrictive relative adverbial phrase ("when being struck by") from that to which it has attached ("while a pedestrian"). This fails because the restrictive "when" makes the entire second "while" phrase one piece, not two.

Thus, we reject Plaintiffs' alternate reading of Section 17(C). But that doesn't end our work, since Plaintiffs' oral-argument reading of Section 17(C) may not be their sole proposed route to reading Section 17(C) to provide UM coverage.

### ii. "While Occupying" Takes As Its Object "Any Auto You Do Not Own"

In their briefing, Plaintiffs argue that Section 17(C) is ambiguous, relying heavily on *State Auto Insurance Co. v. Clifford*, 195 F. App'x 786 (10th Cir. 2006) (unpublished). In *Clifford*, we affirmed a district court's interpretation of nearly identical language to Section 17(C)'s:

| Section 17(C) | Policy Language in *Clifford* |
|---|---|
| The following is added to WHO IS AN INSURED: | The following is added to WHO IS AN INSURED: |
| Any individual "insured" and his or her "family members" are "insured" while "occupying" or while a pedestrian when being struck by any "auto" you do not own except: | Any individual named in the Schedule and his or her "family members" are "insured" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except: |
| Any "auto" owned by that individual or by any "family member". | Any auto owned by that individual or by any "family member." |
| R. vol. 2 at 502. | *Clifford*, 195 F. App'x at 788 n.1. |

17

In *Clifford*, the district court concluded that the Section 17(C)-like language was ambiguous and that the insured had a reasonable expectation of coverage. In their briefing, Plaintiffs quote the following portion of the *Clifford* district court's order, where the court commented on the Section 17(C)-like language, particularly the "while occupying" part:

> For one thing, it [the Section 17(C)-like language] leaves the phrase "while occupying" dangling without any explanation of what is being occupied. Although the phrase "while occupying" presumably refers to while occupying a vehicle of some sort, this phrase's lack of an object leaves the reader struggling to understand which phrases modify which objects in the passage as a whole. The absence of commas makes it even more difficult to understand where phrases stop and start and to what they pertain. This general lack of clarity results in at least two plausible interpretations concerning to which vehicle the exception clause pertains.

*State Auto Ins. Co. v. Clifford*, No. CIV-05-0259-F, 2005 WL 2210217, at *3 (W.D. Okla. Sept. 12, 2005) (unpublished); *see* Appellants' Opening Br. at 16 (quoting *Clifford*, 2005 WL 2210217, at *3).

Because Plaintiffs highlighted this language, we assumed that they were making the same dangling-occupying argument. But at oral argument, Plaintiffs' counsel took a different position. *See* Oral Arg. at 5:22–5:35 ("We believe that the [inaudible] policy provides that . . . 'while occupying any auto you do not own except . . . .'"). Later in oral argument, Plaintiffs' counsel again abandoned any dangling-occupying argument that Plaintiffs had at the very least referenced in their briefs. *See* Oral Arg. at 6:58–7:09 (Q: "You're occupying an auto you don't own, you're covered. You're occupying an auto owned by a family member, you're not covered.

18

You'd agree with that?" A: "Yes, your honor."). But to ensure that we're fully considering Plaintiffs' arguments, we address *Clifford*.

We start with the general principle that *Clifford* "is not binding precedent in this case." *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1239 (10th Cir. 2002).[8] Of course, Plaintiffs may cite *Clifford* for its persuasive value, 10th Cir. R. 32.1(A), but we find it unpersuasive.[9] In *Clifford*, we adopted the district court's interpretation of the Section 17(C)-like language without analyzing it ourselves. *See Clifford*, 195 F. App'x at 788 ("Having thoroughly reviewed the district court's order, the parties' briefs, the record on appeal, and the pertinent law, we agree with the district court's ruling and affirm for substantially the same reasons as set forth in the district court's order."). So in evaluating *Clifford*'s persuasiveness, we direct our attention to the district-court decision that *Clifford* affirmed.

The district court in *Clifford* concluded that the Section 17(C)-like language "defie[d] diagraming." 2005 WL 2210217, at \*3. As noted, it reasoned that the language left "the phrase 'while occupying' dangling without any explanation of what is being occupied." *Id.* We disagree. Indisputably, "occupying" is transitive, and we think it obvious that its object is "any 'auto' you do not own." R. vol. 2 at 502. It

---

[8] Were we to conclude that Section 17(C) is ambiguous, *Clifford* might heavily weigh our reasonable-expectations analysis in favor of Plaintiffs. But because we conclude that Section 17(C) is unambiguous, we need not address *Clifford*'s impact on the parties' reasonable expectations. Again, the reasonable-expectations doctrine doesn't come into play unless we conclude that policy language is ambiguous.

[9] We can sympathize with Plaintiffs' counsel since she has a Tenth Circuit case—though an unpublished one—on her side.

doesn't matter that "any 'auto' you do not own" also serves as the object of the preposition "by."

We reject the *Clifford* district court's approach of leaving "occupying" dangling in favor of some other, unidentified Section 17(C) "vehicle" other than the obvious "any 'auto' you do not own." Although the *Clifford* district court didn't complete its thought and say what other plausible auto "occupying" could refer to, we see only one other possibility—the exception clause's "[a]ny auto owned by that individual or by any 'family member.'" And we see no way that a reader could plausibly read Section 17(C) so that, in connecting to this putative direct object, "occupying" could jump over the waiting "any 'auto' you do not own," and again over the "except" and colon, to land on "[a]ny 'auto' owned by that individual or by any 'family member.'"

Faced with all of these difficulties, Plaintiffs criticize the district court in this case for reading into Section 17(C) two commas (in brackets below):

The following is added to WHO IS AN INSURED:

Any individual "insured" and his or her "family members" are "insured" while "occupying[,]" or while a pedestrian when being struck by[,] any "auto" you do not own except:

Any "auto" owned by that individual or by any "family member".

Although helpful, the commas are unnecessary to the sentence's meaning. No reader could reasonably read this language as leaving "occupying" uncompleted by an object and dangling limply in space—especially when its sensible direct object is

20

nearby and waiting to join it. Reading two helpful but unnecessary commas into Section 17(C) pales next to Plaintiffs' major overhaul, reading "while a pedestrian" out of the statute.

### iii. Section 17(C) Has Only One Meaning

Where does this all leave us? Broadly speaking, under the Oklahoma Uninsured Motorists Coverage endorsement, the Policy provides UM coverage to anyone injured while using a "covered auto" listed in the Policy's Declarations (but not to Zachery Edens since the motorcycle wasn't a covered auto). In addition, Section 17(C) of the Business Auto Extension Endorsement provides additional UM coverage to Edens LLC's executive officers and their family members if injured while occupying, or while struck as pedestrians by, any autos *not* owned by Edens LLC or themselves. The parameters of this UM coverage make sense. Where an executive officer or his family member is struck by an Edens LLC-owned auto, the Policy logically recognizes that such autos are subject to the Policy's adequate liability coverage, eliminating the need for UM coverage. Where an executive officer or his family member is struck by an executive-officer-owned auto or a family-member-owned auto, the Policy leaves it to those persons to pay for their own UM coverage—if they want it—under their personal insurance.

For all of these reasons, we conclude that the language in Section 17(C) is unambiguous. We agree with the district court's interpretation of Section 17(C) as stated in its summary-judgment order:

21

> [T]he individual insured and his or her family members are insured either (1) while occupying any auto the named insureds, the individual, or any family members do not own; or (2) while a pedestrian when being struck by any auto the named insureds, the individual, or any family member do not own.

R. vol. 3 at 797. We conclude that Section 17(C) didn't cover Zachery Edens, because during the accident he was occupying an auto (motorcycle) owned by David and Rhonda Edens.

## B.  Whether the District Court Properly Dismissed the Bad-Faith Claim

Next, Plaintiffs argue that the district court erroneously dismissed their bad-faith claim. They argue that even if the Policy didn't cover Zachery Edens's accident, their bad-faith claim could still survive. *See* Appellants' Opening Br. at 31 ("No court has held that an insured must actually prevail on a separate underlying breach of contract claim in order to maintain a successful bad faith claim." (quoting *Vining ex rel. Vining v. Enter. Fin. Grp., Inc.*, 148 F.3d 1206, 1214 (10th Cir. 1998)). We conclude that Plaintiffs must show that the Policy covered Zachery Edens's accident before they may proceed against Netherlands on their bad-faith claim. Because the Policy provides no coverage here, the district court properly dismissed the bad-faith claim.

Again, "[i]n diversity cases, the substantive law of the forum state governs the analysis of the underlying claims." *Haberman*, 443 F.3d at 1264. To "make out a prima facie case" of bad faith under Oklahoma law, an insured must prove the following elements:

> 1) *he was covered under the automobile liability insurance policy . . .* and that insurers were required to take reasonable actions in handling the . . . claim; 2) the actions of insurers were unreasonable under the circumstances; 3) insurers failed to deal fairly and act in good faith toward [the insured] in their handling of the . . . claim; and 4) the breach or violation of the duty of good faith and fair dealing was the direct cause of any damages sustained by insured.

*Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (emphasis added); *see Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1126–27 (10th Cir. 2012) (noting that jury instructions "properly stated the elements of the tort of bad faith" under Oklahoma law where the instruction's first element was that the insurer "was required under the insurance policies to pay [the insured's] uninsured motorist claim").

Despite this clear statement of Oklahoma law, Plaintiffs argue that they may pursue their bad-faith claim even if the Policy doesn't cover Zachery Edens's accident. They rely on this court's opinion in *Vining*. In *Vining*, an insured brought both a breach-of-contract and bad-faith claim against an insurer after the insurer rescinded a credit life-insurance policy. 148 F.3d at 1209–10. Apparently, the insured eventually abandoned her breach-of-contract claim but prevailed at trial on her bad-faith claim. *Id.* at 1214. A jury concluded that the insurer had improperly rescinded the policy and awarded the insured compensatory and punitive damages. *Id.* at 1210. In discussing the insurer's argument that it was "entitled as a matter of law to a verdict in its favor on the claim of bad faith," *id.* at 1213, we noted that "[n]o court has held that an insured must actually prevail on a separate underlying breach of contract claim in order to maintain a successful bad faith claim," *id.* at 1214.

23

Plaintiffs misunderstand *Vining* to mean that an insured need not show *coverage* to prevail on a bad-faith claim. But *Vining* simply confirms that an insured needn't prevail on a breach-of-contract claim to prevail on a bad-faith claim. Coverage wasn't an issue in *Vining*. In fact, in *Vining* we noted that the jury *found coverage* as part of its bad-faith finding. *See id.* ("[T]he jury instructions specifically mandated a finding that [the insurer] was required to pay [the insured] under the policy before the jury could conclude that [the insurer] acted in bad faith."). A look at the jury instructions confirms that they required a finding of coverage. *Id.* at 1214 n.5. *Vining* is therefore inapposite and unpersuasive in this case, where Plaintiffs have failed to prove coverage.

Under Oklahoma law, an insured must show that he is entitled to coverage to prevail on a bad-faith claim. *Badillo*, 121 P.3d at 1093. Because Plaintiffs didn't satisfy this initial element of their bad-faith claim, the district court didn't erroneously dismiss the claim.

## C.    Whether the Coverage Stacks

Plaintiffs argue that the district court "erred in not finding that UM coverage would stack as the Edens paid premiums for UM coverage based on the number of vehicles covered." Appellants' Opening Br. at 2. Of course, once the district court concluded that the Policy didn't cover Zachery Edens's accident, it didn't need to address whether the UM coverage would stack. Because we have also concluded that the Policy doesn't cover Zachery Edens's accident, we also needn't address this issue.

24

**D.     Plaintiffs' Discovery-Related Issues**

Two of Plaintiffs' issues on appeal involve discovery matters. First, Plaintiffs argue that Netherlands waived any privilege it had in its claim file because it failed to timely produce a privilege log after redacting portions of the claim file in its initial disclosures. *See id.* at 29 (citing Fed. R. Civ. P. 26(b)(5) and N.D. Okla. Civ. R. 26.4). They ask us to reverse the district court's judgment, remand, and instruct the district court to compel Netherlands to produce an unredacted claim file. Second, Plaintiffs argue that, because Netherlands didn't produce a certified copy of the Policy in its Fed. R. Civ. P. 26(a) initial disclosures, the district court should have precluded Netherlands "from relying on any claimed exclusions therein to deny coverage." *Id.* at 25 (citing Fed. R. Civ. P. 37(c)). Thus, Plaintiffs argue that the district court "erred in failing to preclude Netherlands from relying on exclusions from coverage to support its summary judgment motion." *Id.* at 28. For the reasons we discuss below, we conclude that both of these discovery-related arguments lack merit.

**1.     Privilege Waiver and the Redacted Claim File**

As best we can tell, the only time Plaintiffs raised a privilege dispute in the district court was in their First Motion in Limine. Thus, although Plaintiffs never say as much in their briefing, they must be arguing that the district court erroneously terminated their First Motion in Limine.[10] We say "terminated" because the district

_____

[10] Plaintiffs' briefing is unclear on this point. At times, Plaintiffs seem to argue that the district court should have concluded, sua sponte, that Netherlands had waived

25

court never substantively addressed Plaintiffs' First Motion in Limine, even though they had filed it before Netherlands moved for summary judgment and long before the district court granted Netherlands's motion. Instead, after granting Netherlands's summary-judgment motion, the district court simply terminated the First Motion in Limine without explanation. *See* R. vol. 1 at 9 (listing the First Motion in Limine as one of many "Documents Terminated").

Perhaps the district court took the motion at its title and reasonably assumed that the motion purely involved trial issues. *See Motion in Limine*, *Black's Law Dictionary* (10th ed. 2014) (defining a "motion in limine" as "[a] pretrial request that certain inadmissible evidence not be referred to or offered *at trial*" (emphasis added)); *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) ("A motion *in limine* is a request for guidance by the court regarding an evidentiary question, which the court may provide at its discretion to aid the parties in formulating trial strategy." (quotation marks omitted)). Of course, the district court was well within its discretion to terminate any aspect of the First Motion in Limine that was purely trial related because the district court had dismissed the case on summary judgment. *See United*

its claimed privilege and ordered Netherlands to produce an unredacted claim file. For example, without ever mentioning or citing their First Motion in Limine, Plaintiffs argue in their Opening Brief that "[t]he trial court defied well settled Tenth Circuit precedent when it failed to require Netherlands to produce a non-redacted claim file." Appellants' Opening Br. at 30. We can't say that the district court erred in failing to conclude, sua sponte, that Netherlands waived any privilege Netherlands had in its claim file and in failing to compel production of the unredacted claim file when Plaintiffs never brought the discovery dispute to the district court's attention through a motion to compel. This is why we focus on the First Motion in Limine, which is the only document we see in the appellate record that could have put the district court on notice of the discovery dispute.

*States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) ("A ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court."); *Jones*, 59 F.3d at 146 (citing *Yannott*, 42 F.3d at 1007). But the more nuanced question we face on appeal is whether the district court abused its discretion in terminating any aspect of the First Motion in Limine that wasn't trial related. We conclude that the district court didn't abuse its discretion in this respect.

The confusing nature of Plaintiffs' First Motion in Limine makes this question more difficult to answer than it should be. Unquestionably, Plaintiffs sought trial-related remedies in the First Motion in Limine. *See* R. vol. 1 at 213 ("Alternately, [Netherlands] should be precluded from presenting any evidence from their claim file or Plaintiffs are entitled to an adverse inference instruction regarding the redacted portions."). Perhaps this is why Plaintiffs, in their Opening Brief, cite the "standard of review with respect to the admission or exclusion of evidence." Appellants' Opening Br. at 28. As we stated above, though, we don't need to address whether the district court abused its discretion in admitting or excluding the claim file *at trial*. The district court was well within its discretion to terminate the First Motion in Limine when it became clear that the case wasn't going to trial.

But Plaintiffs' First Motion in Limine didn't solely address trial issues. Plaintiffs also requested that the district court "order [Netherlands] to provide Plaintiffs with an unredacted copy of its claim file," arguing that Netherlands had waived its claimed privilege in the file. R. vol. 1 at 214–15. This is essentially a

27

motion to compel trapped within the four corners of a misnamed First Motion in Limine. We assume this is why Plaintiffs, in their Opening Brief, also cite the standard of review for "[a] district court's determinations regarding waiver of attorney-client privilege and work product protection." Appellants' Opening Br. at 28. Yet we have no district-court waiver determination to review here. The district court presumably construed Plaintiffs' First Motion in Limine as just that—a trial-related motion in limine—and terminated it when it entered judgment in favor of Netherlands. Had Plaintiffs filed a motion to compel production of an unredacted claim file in the district court, arguing that Netherlands had waived its claimed privilege, we would have something to review. But all we have to review is the district court's termination of the First Motion in Limine. Without addressing the merits of Plaintiffs' claim that Netherlands violated Rule 26, then, we conclude that the district court didn't abuse its considerable discretion in terminating an irrelevant motion in limine after it granted Netherlands's summary-judgment motion.[11]

## 2. Certified Policy

Plaintiffs also argue on appeal that the district court erred when it failed to preclude Netherlands from relying on any Policy exclusions in Netherlands's

___

[11] We see a number of additional problems with Plaintiffs' actions in the district court. If the First Motion in Limine did indeed have a discovery-related component, why didn't Plaintiffs move to extend the discovery deadline when they filed their First Motion in Limine? Why didn't they file a motion to compel before the discovery deadline, having known of the claim file's redactions and Netherlands's failure to provide a privilege log long before it filed the First Motion in Limine? We note that the proper way to approach privilege issues in the district court is to file a motion to compel once it becomes evident that a party hasn't complied with the duty to produce a privilege log.

28

summary-judgment motion. Specifically, Plaintiffs argue that Netherlands violated Fed. R. Civ. P. 26(a) by providing only incomplete or uncertified versions of the Policy. Netherlands finally did attach a complete, certified Policy to its summary-judgment motion. But, citing Fed. R. Civ. P. 37(c), Plaintiffs argue that the district court should have "precluded [Netherlands] from using the policy to support its summary judgment motion." Appellants' Opening Br. at 24.

Much like the privilege issue, Plaintiffs brought the certified-Policy issue to the district court's attention only in another motion in limine, this time their Second Motion in Limine. Plaintiffs filed their Second Motion in Limine on the same day that Netherlands filed its motion for summary judgment. Again, the district court simply terminated the Second Motion in Limine after granting Netherlands's summary-judgment motion. And, again, the nature of this issue on appeal is much harder to discern than it should be because Plaintiffs filed a misnamed Second Motion in Limine addressing a discovery dispute that should have been addressed in Plaintiffs' response to Netherlands's summary-judgment motion.[12]

In their Second Motion in Limine, Plaintiffs asked the court for "an order in limine that Plaintiffs are entitled to all reasonable policy inferences in their favor, including having any language of exclusion which might preclude coverage for

---

[12] We note that Plaintiffs, in their response to Netherlands's summary-judgment motion, argued that the motion should be stricken because Netherlands failed "to provide its insured with a copy of the policy upon request following a loss." R. vol. 3 at 685. But Plaintiffs didn't cite Rule 37(c) and didn't argue that Netherlands's failure to timely produce a certified Policy was unjustified or harmful. Moreover, the district court denied Plaintiffs' request to strike Netherlands's summary-judgment motion on the merits—a ruling that Plaintiffs don't appeal.

29

Zachery Edens'[s] death, being stricken from the policy." R. vol. 1 at 221. Plaintiffs argued that they were "entitled to these inferences because insurance policies are contracts of adhesion and because [Netherlands] failed to produce a complete certified copy of the policy during discovery." *Id.* As with the privilege issue above, the district court was well within its discretion to terminate this request once it granted Netherlands's summary-judgment motion.

But, as with the First Motion in Limine, Plaintiffs Second Motion in Limine didn't solely relate to trial issues. Later in the Second Motion in Limine, Plaintiffs reference Netherlands's attaching a certified Policy to its summary-judgment motion and argue that Netherlands "cannot rely upon documents produced after the discovery cut off, especially where the document should have been provided earlier." *Id.* at 223 (citing Fed. R. Civ. P. 37(c)). If this was Plaintiffs' attempt to bring a summary-judgment issue to the district court's attention, it was packaged incorrectly as a motion in limine. While Rule 37(c)'s preclusion sanction may be self-executing, any discovery failure must be brought to the district court's attention so that it can address whether the failure was "substantially justified or . . . harmless." Fed. R. Civ. P. 37(c)(1). Both Plaintiffs and Netherlands dispute whether this particular discovery deficiency, if there was one at all, was justified or harmless, but the district court never ruled on the issue. Thus, like the privilege issue, we have nothing to review except for the district court's termination of the Second Motion in Limine. And, just like the privilege issue, we decline to address the merits of the Rule 26(a) and 37(c) discovery dispute. We simply acknowledge that the district court didn't abuse its

discretion in terminating the Second Motion in Limine once it granted Netherlands's summary-judgment motion.

## CONCLUSION

We conclude that the Policy unambiguously precludes UM coverage for Zachery Edens's accident. Because the accident wasn't covered, Plaintiffs' bad-faith claim necessarily fails, and we need not address their argument that their coverage stacked. Finally, we conclude that the district court didn't abuse its discretion when it failed to compel Netherlands to disclose an unredacted claim file and when it allowed Netherlands to rely on the Policy in Netherlands's summary-judgment motion. For these reasons, we affirm the district court's order granting summary judgment in Netherlands's favor. Kevin Simpson's motion to withdraw as counsel for appellee is granted.